THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
CHRISTOPHER BIELAWSKI, Defendant-Appellee.

Second District   No. 2—92—0559

Opinion filed January 19, 1994.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lisa A. Hoffman, both of State's Attorneys Appellate Prosecutor's Office, and Barbara A. Preiner, Assistant State's Attorney, of counsel), for the People.

Barry D. Sheppard and Joan M. Kripke, both of Chicago, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Christopher Bielawski, was charged with unlawful possession of cocaine, a controlled substance, with the intent to deliver (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(a)(2) (now 720 ILCS 570/401(a)(2) (West 1992))) and unlawful possession of cannabis with the intent to deliver (Ill. Rev. Stat. 1991, ch. 56½, par. 705(e) (now 720 ILCS 550/5(e) (West 1992))). The State appeals a trial court order granting in part defendant's motion to suppress certain evidence police seized, pursuant to a warrant, from defendant's apartment. The trial court found that the police made a valid initial entry but that the warrant was invalid because it was obtained as a result of an illegal second warrantless entry. The trial court suppressed all the evidence seized pursuant to the warrant except that which was in plain view during the valid initial search.

On appeal, the State argues that the trial court erred in invalidating the warrant and suppressing any of the evidence seized thereunder. The State argues that although the second entry was illegal, the warrant was valid under the "independent source" doctrine of *Murray v. United States* (1988), 487 U.S. 533, 101 L. Ed. 2d 472, 108 S. Ct. 2529. We agree with the State that the warrant had a valid and sufficient basis independent of the illegal second search. Therefore, we reverse and remand.

On October 30, 1991, pursuant to a sworn complaint by Westmont police officer Richard Musil, Judge Philip Equi issued a search warrant for defendant's apartment. Earlier that day, Officer Daniel Carlson made a warrantless entry into defendant's apartment. Upon leaving the apartment, Carlson told Musil that controlled substances were present in plain view in the apartment. Both officers entered the apartment to make confirmatory observations. After this second warrantless entry, Musil obtained the warrant and the police seized evidence described therein. Defendant moved to suppress this evidence, arguing that the warrant was invalid because it was the product of the allegedly illegal warrantless searches.

In the complaint for a warrant, Officer Musil stated that he had been a police officer for 15 years and a detective for 10 years and had participated in about 50 narcotics investigations. The information in the complaint was based on his own observations, on the observations of officers acting under his supervision, and on information provided by people that Musil had reason to believe were reliable. The complaint alleged the following facts.

At about 3:39 p.m. on October 30, 1991, Judy Sheridan telephoned the Westmont police department, stating that she was the property manager for the building in which defendant lived. She told the police that, earlier that day, maintenance employee Joe Polka observed that the door to defendant's apartment was open and that it appeared that someone had kicked in the door.

Officer Carlson was assigned to investigate the matter. Upon arriving at defendant's apartment, Carlson noticed that the apartment's front door was open; it was damaged and it appeared to have been kicked open. Carlson called for any occupants. As there was no response, Carlson entered the apartment to "check for occupants, and their safety." While he looked for any occupants, Carlson observed, in plain view, packages containing what appeared to be cannabis and a large clear plastic bag containing a white powdery substance that appeared to be cocaine. He also observed two scales and plastic packaging materials.

Carlson left the apartment and reported his observations to Musil. At 3:50 p.m., Musil and Carlson entered the apartment. Musil observed the same items that Carlson had observed on his initial examination. From his experience, Musil believed that defendant's apartment contained cannabis, cocaine, and scales and packaging materials that were suited to weighing and packaging cannabis and cocaine.

Officer Carlson was the sole witness at the hearing on defendant's motion to suppress. He testified that, between 3:30 p.m. and 3:40

p.m. on October 30, 1991, he went to defendant's apartment after the building's management had notified the police that the door was open, apparently from a forcible entry, and that loud music was coming from inside the apartment. Upon arriving, Carlson saw that the door was open about 8 to 10 inches. The door frame had been "broken out" and pieces of wood lay on the ground. Apparently the door had been forcibly opened. Carlson heard extremely loud music emanating from the apartment.

Carlson went to the door, looked through an opening, and, identifying his office, called into the apartment and asked if anyone was there. He received no response, although the loud music kept playing. Worried that there could be a dead or injured person inside, Carlson entered the apartment to check on the well-being of anyone who might be in the apartment.

Upon entering, Carlson went first to the living room. The loud music was coming from a radio. The furniture and some other items were in disarray. On a coffee table was a white paper plate with a substance that Carlson recognized from his training as cannabis. Carlson searched the room for people but found nobody else in the living room. He proceeded to the kitchen and the dining room. On the dining room table was a package that apparently had been taped up and then ripped open. Protruding from the package were stems that Carlson believed were from cannabis plants.

Thinking that somebody might be on the second floor, Carlson ascended the stairway. Looking into the first of two bedrooms, Carlson concluded that someone had ransacked the room, as the bed was partially dismantled and things were scattered all over the floor. On a shelf near the bed was a digital scale with white powder all over it. From his experience, Carlson believed that the white powder was cocaine. There were also plastic bags that appeared to be the type customarily used to package cocaine.

Carlson saw nobody in the first bedroom. He looked next into a closet between the two bedrooms. Nobody was there, and Carlson proceeded into the second bedroom. Various items were strewn about the floor or tipped over. One of the items on the floor was a scale. Nobody else was in the room.

Carlson concluded nobody was in any immediate danger. He went downstairs and called for his supervisor. He had not touched or moved any of the items in the apartment. Carlson told his supervisor, Sergeant Sticha, of the apparent contraband and drug paraphernalia that he had seen. He asked Sticha for help in obtaining a search warrant for the apartment.

About 10 minutes later, Officer Musil arrived. Carlson told Musil what he had seen inside the apartment. Sticha departed and Musil and Carlson entered the apartment together. Carlson pointed out what he had seen the first time that he had been in the apartment. Musil made notes of what Carlson had showed him, but Musil did not make any further searches. Musil and Carlson exited the apartment. Carlson waited outside as Musil went to obtain a search warrant. After Musil obtained the warrant, police officers returned and executed the warrant. Before the warrant was executed, Carlson had not taken possession of any of the items inside the apartment.

After arguments of counsel, the trial judge made the following factual and legal findings. All of Officer Carlson's testimony was credible. Carlson's initial warrantless entry was lawful under the emergency exception to the fourth amendment's warrant requirement. (See *Mincey v. Arizona* (1978), 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408; *People v. Krueger* (1991), 208 Ill. App. 3d 897, 907-08.) However, after Carlson determined that there was no one in the apartment who needed assistance, the emergency ended and no further entry was authorized. Thus, Musil's entry into the apartment and Carlson's continued presence there unlawfully infringed on defendant's privacy.

The totality of Officer Carlson's observations, which were properly presented to Judge Equi through Officer Musil's complaint, stated the probable cause necessary for a warrant. Moreover, after his first and proper search of the apartment, Officer Carlson fully intended to obtain a warrant. The second unlawful entry did not influence the decision to obtain the warrant. Officer Musil entered the apartment not in an attempt to discern whether a warrant should be sought, but only to obtain a list of items that the police would mention in a warrant application that they had already decided to make.

Officer Carlson had the right to seize the incriminating items that were in plain view on his initial walk through the apartment. These items of evidence would not be suppressed. However, although it was not clear from the warrant that Musil observed anything that Carlson had not observed during the emergency search, Officer Musil's observations during the second and improper entry were also communicated to Judge Equi through the warrant application. The State had not met its admitted burden to prove that Officer Musil's observations did not affect Judge Equi's decision on the warrant application.

The court refused to suppress the items that Officer Carlson could have seized lawfully during his initial inspection of the apartment. Further proceedings would be available to determine which of the

items seized pursuant to the warrant fit this description and which would have to be suppressed as the fruits of the invalid warrant.

The State moved to reconsider, arguing that, even if Officer Musil's entry into the apartment was unlawful, the warrant was not invalid. The State urged that the court excise the improper information from the complaint and then determine if the remaining validly obtained information sufficed for probable cause. The State observed that the trial judge himself had found that Officer Carlson's proper initial entry provided enough information to establish probable cause for the search warrant.

At the hearing on the State's motion to reconsider, the trial judge rejected this reasoning. The judge held that because Officer Musil's observations did affect Judge Equi's decision to issue the warrant, *Murray* required the trial court to invalidate the warrant; the court could not merely excise the invalid information but uphold the warrant if the remaining information was objectively sufficient to establish probable cause.

The State timely appealed, electing to forego a pretrial hearing on which of the seized items were properly admissible. On appeal, the State reiterates its argument that, even though the second search by Musil and Carlson was improper, the search warrant had an objectively sufficient independent source in the observations that Officer Carlson made in his initial valid emergency search.

■ Defendant argues that the trial court properly invalidated the warrant. Additionally, defendant challenges the court's decision to admit the evidence that Officer Carlson saw in plain view during his emergency search. Defendant argues that the court should have suppressed all of the challenged evidence because Officer Carlson's observations alone did not constitute probable cause for the issuance of a warrant.

In effect, defendant seeks to cross-appeal from that part of the interlocutory ruling that was not in his favor. Whatever the merits of his attack on the trial court's ruling, that attack is not properly before the court. It is well settled that there is no basis for a defendant to appeal interlocutorily the order of a trial court denying in whole or in part a motion to suppress. (*People v. Busija* (1986), 155 Ill. App. 3d 741, 744-45; *People v. Zach* (1979), 77 Ill. App. 3d 17, 20-21.) Therefore, at this pretrial stage of the case, we consider only the State's challenges to the propriety of the court's order.

■ In *Murray*, the Supreme Court applied the "independent source rule" to facts fairly similar to those here. Federal agents followed two trucks as the trucks entered and soon exited a warehouse.

The agents lawfully seized and searched the vehicles and discovered marijuana in each truck. Several agents returned to the warehouse, entered forcibly without a warrant, and, without disturbing anything in the warehouse, observed numerous wrapped bales inside. The agents obtained a warrant to search the warehouse. The warrant did not mention the prior warrantless entry and did not rely on any of the observations made during that entry. Relying on the warrant, the agents returned and seized the bales, which contained marijuana.

In holding that the improper warrantless entry did not necessarily invalidate the warrant or require the suppression of the evidence seized thereto, the Court explained that the independent source rule allows the admission of "evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality." *Murray*, 487 U.S. at 537, 101 L. Ed. 2d at 480, 108 S. Ct. at 2533.

The Court reasoned that the deterrent purpose of the exclusionary rule would not be served by excluding evidence that is seized by means of a proper warrant which is independent of an earlier illegal search. To suppress evidence under these circumstances would put the State in a worse position than would have obtained had the illegality never taken place. *Murray*, 487 U.S. at 541, 101 L. Ed. 2d at 483, 108 S. Ct. at 2535.

■ The Court held that a search pursuant to a warrant is independent of a prior illegal entry if (1) the illegality did not influence the decision of the police to seek the warrant; and (2) the information obtained via the illegal intrusion did not affect the magistrate's decision to issue the warrant. *Murray*, 487 U.S. at 542, 101 L. Ed. 2d at 483-84, 108 S. Ct. at 2536.

Here, the trial court found on the record that Officer Carlson's decision to obtain a warrant preceded the illegal second entry into defendant's apartment. As this finding is supported by the evidence, we conclude, as did the trial court, that the State satisfied the first prong of the *Murray* test. However, the trial court held that, because Officer Musil signed and filed the complaint, his illegal entry presumably affected Judge Equi's decision to issue the warrant.

The trial court implicitly assumed that the second prong of the *Murray* test is a subjective one, *i.e.*, the issue before it was not whether the validly obtained information was sufficient to provide objective probable cause but whether the State was able to demonstrate that the illegal intrusion had no effect on Judge Equi's decision to issue the warrant. Although this is a superficially plausible reading of *Murray*, we believe that the trial court erred as a matter of law in

deciding against an objective reading of the second prong of the *Murray* test.

The precise meaning of the second part of the test set out in *Murray* was not at issue in that case. None of the information that was obtained via the unlawful search was presented to the magistrate. (*Murray*, 487 U.S. at 542-43, 101 L. Ed. 2d at 483-84, 108 S. Ct. at 2536.) Thus, whether improperly obtained information affected the magistrate's decision was not at issue in *Murray*. Also, the Court was not called on directly to enunciate the remedy where illegally obtained information has been included in a warrant application.

■ The long-standing rule has been that, where information that should not have been considered has been included in a successful warrant application, the warrant itself is not invalid as long as the properly included information suffices to establish probable cause for the warrant. (*Franks v. Delaware* (1978), 438 U.S. 154, 171-72 , 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684-85 (knowing or reckless inclusion of false information in a warrant affidavit does not invalidate the warrant if, after such information is set aside, there remains sufficient information to establish probable cause); *United States v. Alexander* (9th Cir. 1985), 761 F.2d 1294, 1299-1300 (applying *Franks* procedure where warrant affidavit contained both information obtained properly and information obtained via an illegal search).) Cases decided after *Murray* have held that *Murray* did not alter this rule.

In *United States v. Gillenwaters* (4th Cir. 1989), 890 F.2d 679, the police made a valid emergency entry into the defendants' home to attend to a woman who told the officers a man had stabbed her. The defendants were not home at the time. Shortly thereafter, the police apprehended the suspect, who told them that he had gone to the defendants' home to buy drugs. While the officers attended to the victim in one part of the house, they discovered in plain view various drug paraphernalia. One of the defendants arrived home, and the police observed drugs, drug paraphernalia, and a large supply of guns in the house. The police obtained a warrant that was based in part on the information from the valid emergency entry and in part from the improper subsequent search of the house. The district court disregarded the information that resulted from the second search and held that the remaining information established probable cause for a warrant to search the house for illegal drugs.

In upholding the district court's action, the Federal appeals court observed that the district court had followed the generally accepted test for deciding the effect of the inclusion of truthful but improperly obtained information in a warrant affidavit. The court reasoned that

application of the *Franks* procedure was proper in such a case because it fulfilled *Murray*'s admonishment that the exclusionary rule should not be used to place the State in a *worse* position than that it would have enjoyed absent the illegality. *Gillenwaters*, 890 F.2d at 681-82.

The court in *United States v. Herrold* (3d Cir. 1992), 962 F.2d 1131, endorsed this reading of *Murray*. In obtaining a warrant to search the defendant's trailer for evidence of drug and firearms offenses, Federal agents relied both on information that they had obtained via a warrantless and unconsented entry into the trailer and information that they had obtained before they decided to enter the premises. The district court concluded that, even before they made the entry, the agents had intended to obtain a warrant. However, because the warrant application relied in part on tainted information, the district court granted the defendant's motion to suppress evidence found via the warrantless intrusion.

Reversing the suppression order, the Federal appeals court held that *Murray*'s independent source rule required that the government be placed in the same, but no worse, position than it would have been in without the illegal intrusion. Thus, the proper remedy for the fourth amendment violation was to excise only the information that was the fruit of the illegality. If the remaining proper information was objectively sufficient to establish probable cause, the warrant should not have been invalidated. Thus, the district court erred in assuming that *Murray*'s second prong required the government to establish that the magistrate's decision to issue the warrant was entirely independent of the tainted information. As the court explained:

> "The government was not required to make such a showing which probably could have been made only by producing the justice as a witness so that he could be asked to reconstruct his state of mind when he issued the warrant. Rather, the government was required to establish that a *neutral* justice would have issued a warrant based on the untainted information in the affidavit which the police had acquired prior to their entry ***." (Emphasis in original.) *Herrold*, 962 F.2d at 1143.

See also *United States v. Restrepo* (5th Cir. 1992), 966 F.2d 964, 969-70 (and cases cited therein).

■ We agree with the approach of *Gillenwaters* and *Herrold*, which properly and manageably effectuates the purpose of the exclusionary rule. Thus, we hold that, as the trial court found that the information that Officer Carlson obtained from the proper emergency entry was objectively sufficient to support the issuance of the war-

rant, the court should not have invalidated the warrant despite the possible benefit the police obtained from the subsequent illegal entry. The trial court's order had the effect of invalidating a warrant that was adequately supported by properly obtained information and that the police would have applied for even absent the illegal entry. This result did not follow from the independent source rule of *Murray* and was not needed to serve the deterrent purpose of the exclusionary rule, as it placed the government in a worse position than that to which it would have been entitled had the police not undertaken the illegal entry.

The judgment of the circuit court denying the State's motion for reconsideration is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

INGLIS, P.J., and QUETSCH, J., concur.