THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHAWN CARTER, Defendant-Appellant.

Fifth District    No. 5—95—0889

Opinion filed November 8, 1996.

James K. Donovan, of Cueto & Cueto, Ltd., of Belleville, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

Defendant, Shawn Carter, appeals from his conviction, after a stipulated bench trial, of the offense of unlawful production of Cannabis sativa plants. On appeal, defendant argues that the trial court erred in denying his motion to suppress evidence. We find that the court should have granted the motion to suppress. Accordingly, we reverse and remand for a new trial.

## I. ISSUE ON REVIEW

The facts and precise issue presented by this appeal are apparently unique in Illinois and United States Supreme Court reported decisions. We consider whether the fourth amendment to the United States Constitution and the Illinois Constitution, article I, section 6, require the suppression of evidence observed in a warrantless search of a residence where the police illegally entered the residence prior to obtaining a search warrant and where the same police stayed inside the residence for over two hours waiting for the residents to return and refuse consent to search before the officers decided to apply for a search warrant. Under the circumstances of this case, we believe that both federal and state constitutional law require that the evidence seized must be suppressed.

## II. FACTS

The following facts are not disputed. Defendant and his mother, Jo Ann Landers, were both arrested in their home on the evening of July 17, 1995. When they arrived home from work, at least two Collinsville policemen were in the apartment defendant and his mother shared. The police did not have arrest or search warrants. After the residents refused to consent to a search of the apartment, the police decided to apply for a search warrant, which was issued at 11:35 p.m. Defendant's mother was eventually dismissed from the case. On August 2, 1995, defendant filed a motion to suppress the evidence seized by the police. The trial court denied the motion to suppress, relying on *Murray v. United States*, 487 U.S. 533, 101 L. Ed. 2d 472, 108 S. Ct. 2529 (1988), and *People v. Bielawski*, 255 Ill. App. 3d 635 (1994).

The following evidence was presented at the hearing on defendant's motion to suppress. Defendant testified in his own behalf that he returned home to his apartment at approximately 5:30 p.m. after

work on July 17, 1995. When he arrived, two uniformed police officers were waiting inside the apartment. He did not consent to their entry, and they did not have a search warrant. Defendant rested.

The State called Collinsville police officer Scott Williams, who testified that on July 17, 1995, at approximately 3:15 p.m., he was dispatched to an apartment building in Collinsville. The reason for the dispatch was a telephone call from a maintenance man for the building, who reported that he discovered marijuana plants growing in an apartment when he went inside to fix a leak. Williams testified that the maintenance man showed him the window of the apartment where the marijuana was growing. Williams testified that he stood outside the apartment and looked through the window into the kitchen. According to Williams, he was able to see, "sitting in plain view, on top of the microwave, *** a full tray of marijuana plants." Williams and the other officer with him, Sergeant Edward Delmore, learned the names of the occupants of the apartment from the maintenance man.

On cross-examination, Williams testified that the maintenance man told the officers that he had been in the apartment about 15 minutes before the officers arrived and that no one was home at that time. At 3:30 p.m., the maintenance man unlocked the apartment door at the officers' request. The officers went inside the apartment and checked every room and every closet and under the beds but found no one home. After finding no one home, the officers stayed inside the apartment to wait for the occupants to return. Williams testified that he sat at the kitchen table while he waited and that he looked through the mail to check for the names of the residents. He also found a "High Times" magazine that he picked up and looked at to see whose name was on the mailing address, but he testified that he did not look through any drawers and that he did not "recall going through any other items" in the apartment. According to Williams, defendant arrived home at 5:50 p.m., after the two officers had been waiting inside defendant's apartment for 2 hours and 20 minutes.

Williams testified that, when defendant arrived, they did not arrest him at first but instead asked for his consent to search the apartment. He refused.

While the officers continued to wait in the apartment for defendant's mother to return from work, Williams testified that two additional officers came to the apartment, one to replace Williams, who was scheduled to go off duty at 6 p.m., and another, Detective Reis, who interviewed Williams to get information to apply for a search warrant. Williams testified that defendant's mother arrived

home at 7:05 p.m. on July 17, 1995, and that Sergeant Delmore made the decision to apply for a search warrant after defendant and his mother both refused to consent to the search.

Williams testified that he gave the following information to Detective Reis so that a complaint for search warrant could be prepared:

"A. We secured the apartment. Mr. Carter arrived. We interviewed him, asking him for consent. He refused. His mother returned, refused consent. And we decided that obviously, if we didn't have consent to search, we weren't going to search the apartment. So we decided to get the search warrant."

Williams testified in redirect examination that he had knowledge of all of the facts alleged in the affidavit for search warrant, absent his entry into defendant's apartment. The affidavit for search warrant was not signed by Williams but by Detective Reis, who did not testify at the hearing on the motion to suppress.

Sergeant Delmore's testimony essentially tracked that of Officer Williams. However, Delmore described his initial observation of the marijuana plants as follows:

"Q. Now, Sergeant Delmore, did you go outside of the premises to see if you could observe the cannabis plants through a window?

A. We actually walked down to the apartment, and as the maintenance man was opening the door to the apartment, we were able to see the cannabis plants from the outside.

Q. Okay. Now forgetting about the maintenance man opening the door.

A. Okay."

Sergeant Delmore went on to testify that he observed the marijuana plants from outside the apartment, while standing either on a sidewalk or on the parking lot behind the building.

Delmore testified that he was in and out of the apartment while Officer Williams waited inside for defendant to return home and that he did not take any steps to secure a search warrant after defendant arrived home, but, instead, he waited for defendant's mother to return to the apartment. When she came home at 7:05 p.m., Delmore asked her to consent to the search, but she refused. Delmore told her that if she refused, he would get a search warrant. Delmore testified that he decided to apply for a search warrant after defendant and his mother both refused to consent to a search.

Delmore testified that 23 marijuana plants, ranging in height from three to six inches, were seized from defendant's apartment after the search warrant was finally issued.

On November 15, 1995, the trial court entered an order denying defendant's motion to suppress. In that order, the court found that

defendant based his motion on the theory that the seizure of the cannabis plants was unlawful as the "fruit" of the officers' prior illegal entry into the apartment and, therefore, was suppressible. The court stated that it had reviewed the search warrant and found it "clear" that the affidavit supporting the warrant "was predicated upon the viewing of cannabis plants by the officers from outside the apartment through the window." The court found that the warrant did not reveal that the officers had entered the apartment. We note that the complaint for search warrant, the affidavit supporting that complaint, and the search warrant are not included in the record on appeal. However, the record includes sufficient details from which we can determine the issues presented, so that the appellant's failure to include these items on appeal does not affect our decision.

The trial court stated that the United States Supreme Court adopted the independent source rule in *Murray*, 487 U.S. 533, 101 L. Ed. 2d 472, 108 S. Ct. 2529. The court stated that under the independent source rule, "a search pursuant to a warrant is independent of a prior illegal entry if the illegality did not influence the decision of the police to seek a warrant and the information obtained via the illegal intrusion did not affect the magistrate's decision to issue the warrant." The court also found that the independent source rule has been adopted in Illinois in *Bielawski*, 255 Ill. App. 3d 635. Applying the independent source rule to the case before it, the court ruled:

> "[T]he entry to the apartment did not influence the decision of the officers to seek a warrant, as the warrant was based upon the observations of the officers prior to the entry of the apartment. Furthermore, the entry by the officers could not have influenced the judge's decision to issue the warrant as the judge was unaware of the entry, and the warrant was issued by the judge based on the observations of the officers prior to the officers['] entry into the apartment. Therefore, under the independent source doctrine, the entry, legal or not, does not affect the reasonableness of the seizure of the cannabis plants."

The court denied defendant's motion to suppress evidence and his post-trial motion. Defendant appealed from both orders.

## III. ANALYSIS

### A. PRELIMINARY STATEMENT AND STANDARD OF REVIEW

■ As we have previously stated, we have found no case reported in Illinois or considered by the United States Supreme Court that deals with the same or similar facts presented in this case. There are certain cases that deal with some of the facts of this case, but none

that have all of the pertinent facts with which we contend. "It is well settled that the precedential scope of a decision is limited to the facts before the court." *People v. Flatt*, 82 Ill. 2d 250, 261 (1980). Therefore, to the extent of the unique facts presented for our review, this decision is a question of first impression for which we are duty bound to follow both the Illinois and United States Constitutions. Where precedent applies and is relevant, we follow that precedent.

This appeal requires us to review the trial court's decision denying defendant's motion to suppress evidence. On review, we must uphold the trial court's decision on the motion to suppress unless that decision is manifestly erroneous. *People v. Galvin*, 127 Ill. 2d 153 (1989). Finding that the denial of the motion to suppress was manifestly erroneous, we reverse.

## B. FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

■ The trial court based its decision to deny the motion to suppress upon fourth amendment principles, as outlined by the Supreme Court in *Murray* and the Illinois Second District Appellate Court in *Bielawski*. In *Murray*, the Supreme Court considered a factual scenario that is similar in some respects to the facts of this case and dissimilar in other respects. In *Murray*, law enforcement officers illegally searched a warehouse without a search warrant. The officers observed bales of marijuana in the warehouse, left, and applied for a search warrant based only upon observations they made and facts they learned without illegally entering the warehouse. After the search warrant was issued, the officers seized the marijuana that they had observed during the initial illegal search. *Murray*, 487 U.S. at 535-36, 101 L. Ed. 2d at 479, 108 S. Ct. at 2532.

The Supreme Court remanded the case back to the United States District Court to determine the "ultimate question" presented by the case but not answered by the district court:

> "The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Murray*, 487 U.S. at 542, 101 L. Ed. 2d at 483-84, 108 S. Ct. at 2536.

*Murray* is binding precedent upon the case at bar to the extent that the independent source doctrine applies to all searches, regardless of where they take place. However, we find it significant that the Court in *Murray* was not presented with a search of a home, but with

a search of a warehouse. While the fourth amendment protects people, not places (*Katz v. United States*, 389 U.S. 347, 361, 19 L. Ed. 2d 576, 588, 88 S. Ct. 507, 516 (1967)), a search must still be reasonable in order to be constitutional under either the fourth amendment or the Illinois Constitution. *People v. Price*, 195 Ill. App. 3d 701 (1990).

■ Moreover, in *Payton v. New York*, 445 U.S. 573, 576, 63 L. Ed. 2d 639, 644, 100 S. Ct. 1371, 1374 (1980), the Supreme Court held that the fourth amendment, made applicable to the states by the fourteenth amendment, prohibits the police from making a warrantless, nonconsensual entry into a suspect's home for the purpose of making a routine felony arrest or search absent exigent circumstances. The *Payton* Court reasoned:

> "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " *Payton*, 445 U.S. at 585, 63 L. Ed. 2d at 650, 100 S. Ct. at 1379-80, quoting *United States v. United States District Court for Eastern District of Michigan*, 407 U.S. 297, 313, 32 L. Ed. 2d 752, 764, 92 S. Ct. 2125, 2134 (1972).

See also *People v. McPhee*, 256 Ill. App. 3d 102 (1993).

"At the very core of the [of the fourth amendment] stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Payton*, 445 U.S. at 590, 63 L. Ed. 2d at 653, 100 S. Ct. at 1382. Therefore, we base our decision not only upon *Murray*, but also upon the earlier Supreme Court cases construing the mandate and purpose of the fourth amendment. The law firmly establishes that a person's home is entitled to greater protection from unlawful intrusions and illegal searches than commercial enterprises such as warehouses. *People v. Bessler*, 191 Ill. App. 3d 374, 379 (1989). It follows that defendant's right to be free from a warrantless search of his home was greater than the defendants' rights to be free from a warrantless search of their warehouse in *Murray*.

■ In the *Bielawski* case, the Second District Appellate Court interpreted *Murray* as setting up a two-part test for deciding whether a search and seizure pursuant to a warrant is independent of the prior illegal entry:

> "The [*Murray*] Court held that a search pursuant to a warrant is independent of a prior illegal entry if (1) the illegality did not influence the decision of the police to seek the warrant; and (2) the information obtained via the illegal intrusion did not affect the magistrate's decision to issue the warrant." *Bielawski*, 255 Ill. App. 3d at 641.

■ The trial court in the case at bar recognized and applied *Mur*-

*ray's* two-part test as set out in *Bielawski*. However, based upon our review of the evidence, we hold that the trial court incorrectly decided the first part of the test, whether the illegal entry influenced the officers' decision to seek a search warrant. The trial court stated in its order denying defendant's motion that "the entry to the apartment did not influence the decision of the officers to seek a warrant, as the warrant was based upon the observations of the officers prior to the entry of the apartment."

The trial court's finding on this issue is not supported by the record. Both officers who initially entered the apartment testified that they did not decide to seek a search warrant until both residents came home, found the officers inside their home, and refused to consent to the search the officers had already conducted. It is clear from the officers' testimony that they would not have applied for a search warrant if at least one of the residents had consented to the search. Therefore, the trial court was manifestly erroneous in finding that the earlier illegal entry did not influence the officers' decision to seek a search warrant. See *Bielawski*, 255 Ill. App. 3d at 641 (wherein the court found that the first prong of the *Murray* independent source test was satisfied by evidence that the officer's decision to apply for a warrant preceded the illegal second entry).

The trial court herein found that the officers' decision to seek a warrant was not influenced by the illegal entry. That finding is based only upon the fact that the application for search warrant omitted facts about and learned during the illegal entry. We do not believe that the facts stated or omitted in the application for search warrant are the only criteria to be used in deciding whether the officers' decision to apply for a search warrant has been influenced by the illegal search. The information in the application for search warrant is more relevant to the issue of whether the illegal search influenced the magistrate's decision to issue the search warrant.

Not only did the trial court err in applying the two-part independent source test set forth in *Murray* and *Bielawski*, the court's decision also goes against the rationale of the Court in *Murray*:

> "The independent source doctrine does not rest upon *** metaphysical analysis, but upon the policy that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied. So long as a later, lawful seizure is genuinely independent of an earlier, tainted one *** there is no reason why the independent source doctrine should not apply." *Murray*, 487 U.S. at 542, 101 L. Ed. 2d at 483, 108 S. Ct. at 2535.

The evidence presented at the hearing on the motion to suppress

makes it clear that the search conducted pursuant to the warrant is in no way independent of the earlier illegal entry and search. If the police testimony regarding plain view is to be believed, the police certainly had probable cause to obtain a warrant. However, it is clear that the officers here never considered a valid search until the residents refused to consent to the invalid one.

Since it is clear that the officers had no intention of obtaining a warrant until they completed the illegal search and were unable to obtain a valid consent, the government is no more entitled to profit from the illegal search than it would have been if the officers' presence in the apartment had resulted in the requested consent.

## C. ILLINOIS CONSTITUTIONAL LAW

As an alternative, but equally compelling, foundation for our holding, we find that the illegal entry into and search of defendant's home violates Illinois constitutional law.

More than 40 years before the adoption of our current constitution in 1970, the Illinois Supreme Court adopted the exclusionary rule in *People v. Brocamp*, 307 Ill. 448 (1923). In *Brocamp*, the court applied the exclusionary rule to a situation in which the police, without a search warrant, seized evidence from inside and outside the defendant's home. The court found it "very clear that the defendant's constitutional rights were ruthlessly and unlawfully violated," under both federal and state constitutional guarantees. *Brocamp*, 307 Ill. at 453. The court determined that since the defendant timely moved to suppress the evidence and return it to him, the appropriate remedy for the violation of his constitutional rights was to suppress the evidence seized. *Brocamp*, 307 Ill. at 455.

In 1960, the Illinois Supreme Court reaffirmed the exclusionary rule in *People v. Mayo*, 19 Ill. 2d 136 (1960).

> " 'The Supreme Court has uniformly held that evidence procured by an illegal search is not admissible in a criminal prosecution and will be suppressed on motion made in apt time—before the commencement of the trial. *** This protection against an unreasonable search is based on the invasion of the privacy of the individual—his home, office and effects ***.' " *Mayo*, 19 Ill. 2d at 139, quoting *City of Chicago v. Lord*, 3 Ill. App. 2d 410, 415-16 (1954), *aff'd*, 7 Ill. 2d 379 (1955).

> "[From 1870 until 1970], the relevant clause of the Illinois Constitution echoed the words of the fourth amendment of the United States Constitution, providing that:

> > 'The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated ***.' (Ill. Const. 1870, art. II, § 6.)

However, a new constitution was adopted in 1970 and section 6 of article II [was moved to article I and] was amended to provide as follows:

'The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, *invasions of privacy or interceptions of communications by eavesdropping devices or other means*.' (Emphasis added.) (Ill. Const. 1970, art. I, § 6.)" *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 390-91 (1992).

In the *Will County Grand Jury* case, the supreme court stated that a state's constitutional protection may be greater than that of the comparable United States constitutional provision. *Will County Grand Jury*, 152 Ill. 2d at 390. The court determined that the Illinois Constitution offers greater protection against the invasion of an individual's privacy rights than does the federal constitution. *Will County Grand Jury*, 152 Ill. 2d at 390.

Since the *Will County Grand Jury* case was decided, the supreme court has refined the rule to provide that the Illinois courts will interpret search and seizure cases similarly to analogous United States Supreme Court cases when the language of the two constitutions is identical, and that Illinois should craft its own rules for constitutional questions only when the case involves provisions of the Illinois Constitution not found in the United States Constitution. The court went on to state, however, that regardless of which constitutional analysis prevails:

"Decisions involving the exclusionary rule and the Illinois Constitution's article I, section 6, require that we carefully balance the legitimate aims of law enforcement against the right of our citizens to be free from unreasonable governmental intrusion." *People v. Tisler*, 103 Ill. 2d 226, 245 (1984), citing *People v. Smith*, 95 Ill. 2d 412, 422 (1983).

█ Therefore, our decision is supported not only by United States Supreme Court law, but even more so by Illinois case law. We hold, first, that the seizure in this case does not comply with the independent source doctrine as outlined in *Murray* and *Bielawski*, and that the trial court erred in deciding otherwise. However, we also find that the evidence must be suppressed under Illinois constitutional principles, as stated in case law both before and after the adoption of the current, 1970 constitution.

Considering the facts of this case under the analysis set forth in *Brocamp*, the manner in which evidence was seized from defendant's home violated his constitutional rights, even after the warrant issued. The officers' actions in unlawfully entering defendant's home

are at least as constitutionally infirm as the warrantless search conducted in *Brocamp*. We find the illegal entry into defendant's home especially unreasonable and unconstitutional since the officers entered the apartment at a time when they could have been applying for a warrant, 3:30 on a Thursday afternoon. In addition, the officers testified that after they conducted the search in which they discovered the marijuana, which was after they supposedly saw it from outside the apartment, they waited inside defendant's home for over two hours so that they could seek the residents' permission to search.

If a person's property can be seized and used as evidence against him in a court of law under these circumstances, "then the constitution guaranteeing such rights is a mere nullity." *Brocamp*, 307 Ill. at 453. To find this illegal entry and search of defendant's home cured by the subsequent issuance of a search warrant would take an unprecedented and uncalled for stretch of the imagination and common sense. We decline to do so. Under every notion of reasonableness, the procedure utilized by the police in this case invaded defendant's privacy and was patently unreasonable, and as such, the evidence seized must be suppressed. See *Mayo*, 19 Ill. 2d at 139.

Finally, in weighing law enforcement's legitimate aims against the right of defendant to be free from unreasonable searches and seizures, we find no legitimate law enforcement aim to weigh. If the officers had any intention of preserving defendant's constitutional rights, they would have applied for a search warrant as soon as they confirmed the informant's tip that defendant was growing marijuana inside his apartment. The State did not argue that the search was justified by any other exception, such as exigent circumstances. Nor does the State argue that the officers' conduct was supported by any legitimate aim, but only that the second search, after the warrant was issued, was independent of the earlier illegal entry and search. We have already explained why such an assertion cannot be supported by this record.

## IV. CONCLUSION

For all of the reasons stated, the order of the trial court denying defendant's motion to suppress evidence is reversed, and the case is remanded for a new trial or other proceedings consistent with this opinion.

Reversed and remanded.

GOLDENHERSH and CHAPMAN, JJ., concur.