No. 5-95-0889

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              FIFTH DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS,)  Appeal from the

                                    )  Circuit Court of

     Plaintiff-Appellee,            )  Madison County.

                                    )

v.                                  )  No. 95-CF-1392

                                    )

SHAWN CARTER,                       )  Honorable

                                    )  Charles V. Romani,

     Defendant-Appellant.           )  Judge, presiding.

_________________________________________________________________

     PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

     Defendant, Shawn Carter, appeals from his conviction, after a

stipulated bench trial, of the offense of unlawful production of

cannabis sativa plants.  On appeal, defendant argues that the trial

court erred in denying his motion to suppress evidence.  We find

that the court should have granted the motion to suppress. 

Accordingly, we reverse and remand for a new trial.

                            I. ISSUE ON REVIEW

     The facts and precise issue presented by this appeal are

apparently unique in Illinois and United States Supreme Court

reported decisions.  We consider whether the fourth amendment to

the United States Constitution and the Illinois Constitution,

article I, section six, require the suppression of evidence

observed in a warrantless search of a residence where the police

illegally entered the residence prior to obtaining a search warrant

and where the same police stayed inside the residence for over two

hours waiting for the residents to return and refuse consent to

search before the officers decided to apply for a search warrant. 

Under the circumstances of this case, we believe that both Federal

and State constitutional law require that the evidence seized must

be suppressed.  

                                II. FACTS 

     The following facts are not disputed.  Defendant and his

mother, Jo Ann Landers, were both arrested in their home on the

evening of July 17, 1995.  When they arrived home from work, at

least two Collinsville policemen were in the apartment defendant

and his mother shared.  The police did not have arrest or search

warrants.  After the residents refused to consent to a search of

the apartment, the police decided to apply for a search warrant,

which was issued at 11:35 p.m.  Defendant's mother was eventually

dismissed from the case.  On August 2, 1995, defendant filed a

motion to suppress the evidence seized by the police.  The trial

court denied the motion to suppress, relying on Murray v. United

States, 487 U.S. 533, 101 L. Ed. 2d 472, 108 S. Ct. 2529 (1988),

and People v. Bielawski, 255 Ill. App. 3d 635 (1994).

     The following evidence was presented at the hearing on

defendant's motion to suppress.  Defendant testified in his own

behalf that he returned home to his apartment at approximately 5:30

p.m. after work on July 17, 1995.  When he arrived, two uniformed

police officers were waiting inside the apartment.  He did not

consent to their entry, and they did not have a search warrant. 

Defendant rested.

     The State called Collinsville police officer Scott Williams,

who testified that on July 17, 1995, at approximately 3:15 p.m., he

was dispatched to an apartment building in Collinsville.  The

reason for the dispatch was a telephone call from a maintenance man

for the building, who reported that he discovered marijuana plants

growing in an apartment when he went inside to fix a leak. 

Williams testified that the maintenance man showed him the window

of the apartment where the marijuana was growing.  Williams

testified that he stood outside the apartment and looked through

the window into the kitchen.  According to Williams, he was able to

see, "sitting in plain view, on top of the microwave, *** a full

tray of marijuana plants."  Williams and the other officer with

him, Sergeant Edward Delmore, learned the names of the occupants of

the apartment from the maintenance man. 

     On cross-examination, Williams testified that the maintenance

man told the officers that he had been in the apartment about 15

minutes before the officers arrived and that no one was home at

that time.  At 3:30 p.m., the maintenance man unlocked the

apartment door at the officers' request.  The officers went inside

the apartment and checked every room and every closet and under the

beds but found no one home.  After finding no one home, the

officers stayed inside the apartment to wait for the occupants to

return.  Williams testified that he sat at the kitchen table while

he waited and that he looked through the mail to check for the

names of the residents.  He also found a "High Times" magazine that

he picked up and looked at to see whose name was on the mailing

address, but he testified that he did not look through any drawers

and that he did not "recall going through any other items" in the

apartment.  According to Williams, defendant arrived home at 5:50

p.m., after the two officers had been waiting inside defendant's

apartment for 2 hours and 20 minutes.

     Williams testified that when defendant arrived, they did not

arrest him at first but instead asked for his consent to search the

apartment.  He refused.  

     While the officers continued to wait in the apartment for

defendant's mother to return from work, Williams testified that two

additional officers came to the apartment, one to replace Williams,

who was scheduled to go off duty at 6 p.m., and another, Detective

Reis, who interviewed Williams to get information to apply for a

search warrant.  Williams testified that defendant's mother arrived

home at 7:05 p.m. on July 17, 1995, and that Sergeant Delmore made

the decision to apply for a search warrant after defendant and his

mother both refused to consent to the search.  

     Williams testified that he gave the following information to

Detective Reis so that a complaint for search warrant could be

prepared:

          "A.  We secured the apartment.  Mr. Carter arrived. 

     We interviewed him, asking him for consent.  He refused. 

     His mother returned, refused consent.  And we decided

     that obviously, if we didn't have consent to search, we

     weren't going to search the apartment.  So we decided to

     get the search warrant."  

     Williams testified in redirect examination that he had

knowledge of all of the facts alleged in the affidavit for search

warrant, absent his entry into defendant's apartment.  The

affidavit for search warrant was not signed by Williams but by

Detective Reis, who did not testify at the hearing on the motion to

suppress.  

     Sergeant Delmore's testimony essentially tracked that of

Officer Williams.  However, Delmore described his initial observa-

tion of the marijuana plants as follows:

          "Q.  Now, Sergeant Delmore, did you go outside of

     the premises to see if you could observe the cannabis

     plants through a window?

          A.  We actually walked down to the apartment, and as

     the maintenance man was opening the door to the apart-

     ment, we were able to see the cannabis plants from the

     outside.

          Q.  Okay.  Now forgetting about the maintenance man

     opening the door.

          A.  Okay."

Sergeant Delmore went on to testify that he observed the marijuana

plants from outside the apartment, while standing either on a

sidewalk or on the parking lot behind the building.  

     Delmore testified that he was in and out of the apartment

while Officer Williams waited inside for defendant to return home,

and that he did not take any steps to secure a search warrant after

defendant arrived home, but instead, he waited for defendant's

mother to return to the apartment.  When she came home at 7:05

p.m., Delmore asked her to consent to the search, but she refused. 

Delmore told her that if she refused, he would get a search

warrant.  Delmore testified that he decided to apply for a search

warrant after defendant and his mother both refused to consent to

a search.   

     Delmore testified that 23 marijuana plants, ranging in height

from three to six inches, were seized from defendant's apartment

after the search warrant was finally issued.  

     On November 15, 1995, the trial court entered an order denying

defendant's motion to suppress.  In that order, the court found

that defendant based his motion on the theory that the seizure of

the cannabis plants was unlawful as the "fruit" of the officers'

prior illegal entry into the apartment and, therefore, was

suppressible.  The court stated that it had reviewed the search

warrant and found it "clear" that the affidavit supporting the

warrant "was predicated upon the viewing of cannabis plants by the

officers from outside the apartment through the window."  The court

found that the warrant did not reveal that the officers had entered

the apartment.  We note that the complaint for search warrant, the

affidavit supporting that complaint, and the search warrant are not

included in the record on appeal.  However, the record includes

sufficient details from which we can determine the issues present-

ed, so that the appellant's failure to include these items on

appeal does not affect our decision.  

     The trial court stated that the United States Supreme Court

adopted the independent source rule in Murray, 487 U.S. 533, 101 L.

Ed. 2d 472, 108 S. Ct. 2529.  The court stated that under the

independent source rule, "a search pursuant to a warrant is

independent of a prior illegal entry if the illegality did not

influence the decision of the police to seek a warrant and the

information obtained via the illegal intrusion did not affect the

magistrate's decision to issue the warrant."  The court also found

that the independent source rule has been adopted in Illinois in

Bielawski, 255 Ill. App. 3d 635.  Applying the independent source

rule to the case before it, the court ruled:

     "[T]he entry to the apartment did not influence the

     decision of the officers to seek a warrant, as the

     warrant was based upon the observations of the officers

     prior to the entry of the apartment.  Furthermore, the

     entry by the officers could not have influenced the

     judge's decision to issue the warrant as the judge was

     unaware of the entry, and the warrant was issued by the

     judge based on the observations of the officers prior to

     the officers['] entry into the apartment.  Therefore,

     under the independent source doctrine, the entry, legal

     or not, does not affect the reasonableness of the seizure

     of the cannabis plants."

The court denied defendant's motion to suppress evidence and his

posttrial motion.  Defendant appealed from both orders.

                               III. ANALYSIS

              A. PRELIMINARY STATEMENT AND STANDARD OF REVIEW

     As we have previously stated, we have found no case reported

in Illinois or considered by the United States Supreme Court that

deals with the same or similar facts presented in this case.  There

are certain cases that deal with some of the facts of this case,

but none that have all of the pertinent facts with which we

contend.  "It is well settled that the precedential scope of a

decision is limited to the facts before the court."  People v.

Flatt, 82 Ill. 2d 250, 261 (1980).  Therefore, to the extent of the

unique facts presented for our review, this decision is a question

of first impression for which we are duty bound to follow both the

Illinois and United States Constitutions.  Where precedent applies

and is relevant, we follow that precedent.

     This appeal requires us to review the trial court's decision

denying defendant's motion to suppress evidence.  On review, we

must uphold the trial court's decision on the motion to suppress

unless that decision is manifestly erroneous.  People v. Galvin,

127 Ill. 2d 153 (1989).  Finding that the denial of the motion to

suppress was manifestly erroneous, we reverse.

           B. FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

     The trial court based its decision to deny the motion to

suppress upon fourth amendment principles, as outlined by the

Supreme Court in Murray and the Illinois second district appellate

court in Bielawski.  In Murray, the Supreme Court considered a

factual scenario that is similar in some respects to the facts of

this case and dissimilar in other respects.  In Murray, law

enforcement officers illegally searched a warehouse without a

search warrant.  The officers observed bales of marijuana in the

warehouse, left, and applied for a search warrant based only upon

observations they made and facts they learned without illegally

entering the warehouse.  After the search warrant was issued, the

officers seized the marijuana that they had observed during the

initial illegal search.  Murray, 487 U.S. at 535-36, 101 L. Ed. 2d

at 479, 108 S. Ct. at 2532.  

     The Supreme Court remanded the case back to the United States

district court to determine the "ultimate question" presented by

the case but not answered by the district court:

          "The ultimate question, therefore, is whether the

     search pursuant to warrant was in fact a genuinely

     independent source of the information and tangible

     evidence at issue here.  This would not have been the

     case if the agents' decision to seek the warrant was

     prompted by what they had seen during the initial entry,

     or if the information obtained during that entry was

     presented to the Magistrate and affected his decision to

     issue the warrant."  Murray, 487 U.S. at 542, 101 L. Ed.

     2d at 483-84, 108 S. Ct. at 2536.  

     Murray is binding precedent upon the case at bar to the extent

that the independent source doctrine applies to all searches,

regardless of where they take place.  However, we find it signifi-

cant that the Court in Murray was not presented with a search of a

home, but with a search of a warehouse.  While the fourth amendment

protects people, not places (Katz v. United States, 389 U.S. 347,

361, 19 L. Ed. 2d 576, 588, 88 S. Ct. 507, 516 (1967)), a search

must still be reasonable in order to be constitutional under either

the fourth amendment or the Illinois Constitution.  People v.

Price, 195 Ill. App. 3d 701 (1990).  

     Moreover, in Payton v. New York, 445 U.S. 573, 585, 63 L. Ed.

2d 639, 650, 100 S. Ct. 1371, 1379 (1980), the Supreme Court held: 

     "[T]he fourth amendment, made applicable to the states by

     the fourteenth amendment, prohibits the police from

     making a warrantless, nonconsensual entry into a

     suspect's home for the purpose of making a routine felony

     arrest or search absent exigent circumstances."    

The Payton Court reasoned:

     "[T]he `physical entry of the home is the chief evil

     against which the wording of the Fourth Amendment is

     directed.'"  Payton, 445 U.S. at 585, 63 L. Ed. 2d at

     650, 100 S. Ct. at 1379-80 (quoting United States v.

     United States District Court for Eastern District of

     Michigan, 407 U.S. 297, 313, 32 L. Ed. 2d 752, 764, 92 S.

     Ct. 2125, 2134 (1972)).  

See also People v. McPhee, 256 Ill. App. 3d 102 (1993).  

     "At the very core of the [of the fourth amendment] stands the

right of a man to retreat into his own home and there be free from

unreasonable government intrusion."  Payton, 445 U.S. at 590, 63 L.

Ed. 2d at 653, 100 S. Ct. at 1382.  Therefore, we base our decision

not only upon Murray, but also upon the earlier Supreme Court cases

construing the mandate and purpose of the fourth amendment.  The

law firmly establishes that a person's home is entitled to greater

protection from unlawful intrusions and illegal searches than

commercial enterprises such as warehouses.  People v. Bessler, 191

Ill. App. 3d 374, 379 (1989).  It follows that defendant's right to

be free from a warrantless search of his home was greater than the

defendants' rights to be free from a warrantless search of their

warehouse in Murray.   

     In the Bielawski case, the second district appellate court

interpreted Murray as setting up a two-part test for deciding

whether a search and seizure pursuant to a warrant is independent

of the prior illegal entry:

          "The [Murray] Court held that a search pursuant to

     a warrant is independent of a prior illegal entry if (1)

     the illegality did not influence the decision of the

     police to seek the warrant; and (2) the information

     obtained via the illegal intrusion did not affect the

     magistrate's decision to issue the warrant."  Bielawski,

     255 Ill. App. 3d at 641.

     The trial court in the case at bar recognized and applied

Murray's two-part test as set out in Bielawski.  However, based

upon our review of the evidence, we hold that the trial court

incorrectly decided the first part of the test, whether the illegal

entry influenced the officers' decision to seek a search warrant. 

The trial court stated in its order denying defendant's motion that

"the entry to the apartment did not influence the decision of the

officers to seek a warrant, as the warrant was based upon the

observations of the officers prior to the entry of the apartment." 

     The trial court's finding on this issue is not supported by

the record.  Both officers who initially entered the apartment

testified that they did not decide to seek a search warrant until

both residents came home, found the officers inside their home, and

refused to consent to the search the officers had already conduct-

ed.  It is clear from the officers' testimony that they would not

have applied for a search warrant if at least one of the residents

had consented to the search.  Therefore, the trial court was

manifestly erroneous in finding that the earlier illegal entry did

not influence the officers' decision to seek a search warrant.  See

Bielawski, 255 Ill. App. 3d at 641 (wherein the court found that

the first prong of the Murray independent source test was satisfied

by evidence that the officer's decision to apply for a warrant

preceded the illegal second entry).  

     The trial court herein found that the officers' decision to

seek a warrant was not influenced by the illegal entry.  That

finding is based only upon the fact that the application for search

warrant omitted facts about and learned during the illegal entry. 

We do not believe that the facts stated or omitted in the applica-

tion for search warrant are the only criteria to be used in

deciding whether the officers' decision to apply for a search

warrant has been influenced by the illegal search.  The information

in the application for search warrant is more relevant to the issue

of whether the illegal search influenced the magistrate's decision

to issue the search warrant.   

     Not only did the trial court err in applying the two-part

independent source test set forth in Murray and Bielawski, the

court's decision also goes against the rationale of the Court in

Murray:

     "The independent source doctrine does not rest upon ***

     metaphysical analysis, but upon the policy that, while

     the government should not profit from its illegal

     activity, neither should it be placed in a worse position

     than it would otherwise have occupied.  So long as a

     later, lawful seizure is genuinely independent of an

     earlier, tainted one *** there is no reason why the

     independent source doctrine should not apply."  Murray,

     487 U.S. at 542, 101 L. Ed. 2d at 483, 108 S. Ct. at

     2535.

     The evidence presented at the hearing on the motion to

suppress makes it clear that the search conducted pursuant to the

warrant is in no way independent of the earlier illegal entry and

search.  If the police testimony regarding plain view is to be

believed, the police certainly had probable cause to obtain a

warrant.  However, it is clear that the officers here never

considered a valid search until the residents refused to consent to

the invalid one. 

     Since it is clear that the officers had no intention of

obtaining a warrant until they completed the illegal search and

were unable to obtain a valid consent, the government is no more

entitled to profit from the illegal search than it would have been

if the officers' presence in the apartment had resulted in the

requested consent.

                      C. ILLINOIS CONSTITUTIONAL LAW

     As an alternative, but equally compelling, foundation for our

holding, we find that the illegal entry into and search of

defendant's home violates Illinois constitutional law.  

     More than 40 years before the adoption of our current

constitution in 1970, the Illinois Supreme Court adopted the

exclusionary rule in People v. Brocamp, 307 Ill. 448 (1923).  In

Brocamp, the court applied the exclusionary rule to a situation in

which the police, without a search warrant, seized evidence from

inside and outside the defendant's home.  The court found it "very

clear that the defendant's constitutional rights were ruthlessly

and unlawfully violated," under both Federal and State constitu-

tional guarantees.  Brocamp, 307 Ill. at 453.  The court determined

that since the defendant timely moved to suppress the evidence and

return it to him, the appropriate remedy for the violation of his

constitutional rights was to suppress the evidence seized. 

Brocamp, 307 Ill. at 455.

     In 1960, the Illinois Supreme Court reaffirmed the exclusion-

ary rule in People v. Mayo, 19 Ill. 2d 136 (1960).  

     "`The Supreme Court has uniformly held that evidence

     procured by an illegal search is not admissible in a

     criminal prosecution and will be suppressed on motion

     made in apt time--before the commencement of the trial. 

     *** This protection against an unreasonable search is

     based on the invasion of the privacy of the individual-

     -his home, office and effects ***."  Mayo, 19 Ill. 2d at

     139 (quoting City of Chicago v. Lord, 3 Ill. App. 2d 410,

     415-16, aff'd, 7 Ill. 2d 379 (1955)).    

          "[From 1870 until 1970], the relevant clause of the

     Illinois Constitution echoed the words of the fourth

     amendment of the United States Constitution, providing

     that:

               `The right of the people to be secure in

          their persons, houses, papers and effects,

          against unreasonable searches and seizures,

          shall not be violated ***.'  (Ill. Const.

          1870, art. II, §6.)

     However, a new constitution was adopted in 1970 and

     section 6 of article II [was moved to article I and] was

     amended to provide as follows:

               `The people shall have the right to

          besecure in their persons, houses, papers and

          other possessions against unreasonable search-

          es, seizures, invasions of privacy or inter-

          ceptions of communications by eavesdropping

          devices or other means.'  (Emphasis added.) 

          (Ill. Const. 1970, art. I, §6.)"  In re May

          1991 Will County Grand Jury, 152 Ill. 2d 381,

          390-91 (1992).

     In the Will County Grand Jury case, the supreme court stated

that a State's constitutional protection may be greater than that

of the comparable United States constitutional provision.  Will

County Grand Jury, 152 Ill. 2d at 390.  The court determined that

the Illinois Constitution offers greater protection against the

invasion of an individual's privacy rights than does the Federal

Constitution.  Will County Grand Jury, 152 Ill. 2d at 390.  

     Since the Will County Grand Jury case was decided, the supreme

court has refined the rule to provide that the Illinois courts will

interpret search and seizure cases similarly to analogous United

States Supreme Court cases when the language of the two constitu-

tions is identical, and that Illinois should craft its own rules

for constitutional questions only when the case involves provisions

of the Illinois Constitution not found in the United States

Constitution.  The court went on to state, however, that regardless

of which constitutional analysis prevails:

          "Decisions involving the exclusionary rule and the

     Illinois Constitution's article I, section 6, require

     that we carefully balance the legitimate aims of law

     enforcement against the right of our citizens to be free

     from unreasonable governmental intrusion."  People v.

     Tisler, 103 Ill. 2d 226, 245 (1984) (citing People v.

     Smith, 95 Ill. 2d 412, 422 (1983)).

     Therefore, our decision is supported not only by United States

Supreme Court law, but even more so by Illinois case law.  We hold,

first, that the seizure in this case does not comply with the

independent source doctrine as outlined in Murray and Bielawski,

and that the trial court erred in deciding otherwise.  However, we

also find that the evidence must be suppressed under Illinois

constitutional principles, as stated in case law both before and

after the adoption of the current, 1970 constitution.

     Considering the facts of this case under the analysis set

forth in Brocamp, the manner in which evidence was seized from

defendant's home violated his constitutional rights, even after the

warrant issued.  The officers' actions in unlawfully entering

defendant's home are at least as constitutionally infirm as the

warrantless search conducted in Brocamp.  We find the illegal entry

into defendant's home especially unreasonable and unconstitutional

since the officers entered the apartment at a time when they could

have been applying for a warrant, 3:30 on a Thursday afternoon.  In

addition, the officers testified that after they conducted the

search in which they discovered the marijuana, which was after they

supposedly saw it from outside the apartment, they waited inside

defendant's home for over two hours so that they could seek the

residents' permission to search.  

     If a person's property can be seized and used as evidence

against him in a court of law under these circumstances, "then the

constitution guaranteeing such rights is a mere nullity."  Brocamp,

307 Ill. at 453.  To find this illegal entry and search of

defendant's home cured by the subsequent issuance of a search

warrant would take an unprecedented and uncalled for stretch of the

imagination and common sense.  We decline to do so.  Under every

notion of reasonableness, the procedure utilized by the police in

this case invaded defendant's privacy and was patently unreason-

able, and as such, the evidence seized must be suppressed.  See

Mayo, 19 Ill. 2d at 139.

     Finally, in weighing law enforcement's legitimate aims against

the right of defendant to be free from unreasonable searches and

seizures, we find no legitimate law enforcement aim to weigh.  If

the officers had any intention of preserving defendant's constitu-

tional rights, they would have applied for a search warrant as soon

as they confirmed the informant's tip that defendant was growing

marijuana inside his apartment.  The State did not argue that the

search was justified by any other exception, such as exigent

circumstances.  Nor does the State argue that the officers' conduct

was supported by any legitimate aim, but only that the second

search, after the warrant was issued, was independent of the

earlier illegal entry and search.  We have already explained why

such an assertion cannot be supported by this record.

                              IV. CONCLUSION

     For all of the reasons stated, the order of the trial court

denying defendant's motion to suppress evidence is reversed, and

the case is remanded for a new trial or other proceedings consis-

tent with this opinion.

     Reversed and remanded.

     GOLDENHERSH, J., and CHAPMAN, J., concur.

                                      NO. 5-95-0889

                                     IN THE

                          APPELLATE COURT OF ILLINOIS

                                 FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS,)  Appeal from the

                                    )  Circuit Court of

     Plaintiff-Appellee,            )  Madison County.

                                    )

v.                                  )  No. 95-CF-1392

                                    )

SHAWN CARTER,                       )  Honorable

                                    )  Charles V. Romani,

     Defendant-Appellant.           )  Judge, presiding.

___________________________________________________________________________

Opinion Filed:                  November 8, 1996

___________________________________________________________________________

Justices:      Honorable Terrence J. Hopkins, P.J.

                         

               Honorable Richard P. Goldenhersh, J., and

               Honorable Charles W. Chapman, J.,

               Concur

___________________________________________________________________________

                         

Attorney       James K. Donovan, Cueto & Cueto, Ltd., 7110 W. Main Street,

for            Belleville, IL 62223

Appellant      

___________________________________________________________________________

Attorneys      Hon. William Haine, State's Attorney, Madison County 

for            Courthouse, 157 N. Main Street, Edwardsville, IL 62025

Appellee       

               Norbert J. Goetten, Director, Stephen E. Norris, Deputy 

               Director, Rebecca Sanders, Staff Attorney, Office of the

               State's Attorneys Appellate Prosecutor, Rt. 15 East, P.O. 

               Box 2249, Mt. Vernon, IL 62864

___________________________________________________________________________