(No. 14869.—Reversed and remanded.)

The People of the State of Illinois, Defendant in Error, *vs.* Earl Brocamp, Plaintiff in Error.

*Opinion filed February 21, 1923—Rehearing denied April 5, 1923.*

1. Criminal law—*evidence obtained by unlawful search and seizure is not admissible against defendant.* Officers have no right to enter a home by force and search the premises without first obtaining a proper warrant for such search and seizure, and articles which have been obtained by such unlawful search and seizure can not be admitted in evidence against the defendant in a trial for receiving stolen property where the defendant has in apt time petitioned the court to investigate the legality of the seizure.

2. Same—*when the trial court is bound to investigate alleged unlawful seizure of evidence.* The court, on objection to the admission of evidence, need not stop the trial to ascertain how and where the evidence was obtained, but where a defendant in apt time charges that certain exhibits were obtained by unlawful search and seizure of his premises, the court should make an investigation and order the return of the property if the defendant's constitutional rights have been violated.

3. Same—*burglary, larceny and receiving stolen property may be joined in one indictment.* The offenses of burglary, larceny and receiving stolen goods may be joined in one indictment against one or several defendants, and such an indictment will not be subject to a successful attack by motion to quash or by demurrer merely because the offenses are different or because it may appear that one or more defendants are guilty of one of such offenses.

4. Same—*what crimes may be joined in one indictment.* Crimes which arise or grow out of the same transaction may be joined in one indictment, and the doctrine of election by the State does not apply.

5. Same—*conviction of witness of an infamous crime must be shown by record or certified copy.* Proof of conviction of an infamous crime for the purpose of affecting the credibility of a witness can be made only by the introduction of the record of the conviction or a properly certified copy thereof, and the State's attorney is guilty of improper conduct in asking the defendant, as a witness, if he was not convicted of larceny in a Federal court.

Writ of Error to the Circuit Court of Peoria county; the Hon. Theodore N. Green, Judge, presiding.

George W. Sprenger, for plaintiff in error.

Edward J. Brundage, Attorney General, Ernest J. Galbraith, State's Attorney, Edward C. Fitch, and Irwin L. Fuller, for the People.

Mr. Justice Duncan delivered the opinion of the court:

Earl Brocamp, plaintiff in error, was convicted in the circuit court of Peoria county for receiving stolen property of the value of $50 knowing the same to be stolen, and his age was found to be thirty-one years. The indictment contained two counts, the other count charging grand larceny. Motions for new trial and in arrest of judgment were overruled by the court and he was sentenced to serve an indefinite term in the penitentiary.

About the 4th of December, 1921, a garage of Leroy Burr, in the city of Peoria, was burglarized and eleven automobile tires, an electric drill, three wrenches, one bolt-cutter and a box of pump-packing were taken therefrom. On December 8, 1921, an investigator from the State's attorney's office and several deputy sheriffs went to the cottage of plaintiff in error, known as the "White House," located in Peoria county on the bank of the Illinois river and facing a public road known as the Galena road. He had rented this cottage October 1, 1921, and was living in it with his family. The river at this point runs in a north-easterly and southwesterly direction, and the Galena road runs parallel thereto and adjacent to a very high bluff and on a level with a single-track electric street car line on the southerly side thereof. Adjacent to the river side of the street car track and at a distance of several feet below the level is the right of way and single track of the Chicago, Rock Island and Pacific Railroad Company. This right of way is used by the occupants of the summer cottages along the river there as a passageway, with crossings placed

at various points from the public road across the street car
and railroad tracks to the cottages.   Adjacent to the river
side of the railroad track is a strip of ground about eigh-
teen feet in width, which at the entrance to the White
House is on a level with the floor of the porch and is
reached by means of a wooden bridge.   At the river side
of this strip of ground there is a drop of approximately
fifteen feet to the sand upon which the house itself is built,
and from the rear of the cottage to the river is a sandy
beach.   The White House consists of approximately two
stories.   The first floor is built below the level of the eigh-
teen-foot strip of ground lying immediately in front and is
used as a kitchen and a store-room, and the second floor is
on a level with the eighteen-foot strip and has a room and
sleeping quarters, the latter being directly over the kitchen
and store-room, and the living room extends beyond the
front wall of the kitchen a distance of twelve feet toward
the embankment at the front.   A porch six feet in width
extends across the front of the cottage, connected with the
ground in front by the wooden bridge, with stairs leading
down to the kitchen on the side of the house.   To the south-
west of this cottage about twenty feet is another cottage,
known as the "Buena Vista," of practically the same con-
struction as the White House and connected therewith by
a wooden bridge or walk.   Beneath the living room of the
White House and parallel with the public road is an area-
way formed on the river side by the front wall of the
kitchen, on the road side by the earth wall or embankment,
and overhead by the floor of the living room.   This area-
way is open at both ends, so that it is possible to see in a
northeasterly and southwesterly direction through the same
and a person can walk through it in a crouching position.
The White House was occupied by plaintiff in error and
his family from October 1, 1921, to December 8, 1921,
while the Buena Vista was occupied by his step-son, Rob-
ert Slagle.   Within this areaway were piled some old lum-

ber used for kindling, a quantity of soft coal, and also a piece of an old railroad tie, which was used as a chopping block. The soil within this areaway is composed mostly of sand, with some cinders and ashes, and around the chopping block were wooden chips and splinters. While the investigator and the officers were examining the areaway, one of them noticed a hollow sound while they were walking near the chopping block. They removed about six inches of the top soil and discovered a box, which on being removed was found to be about four feet wide, seven feet long and four feet deep. It was found directly under the living room of the cottage, with one side almost against the front wall. Upon the sand covering the lid of the box was the old railroad tie used as a chopping block and an ax. On being opened the box was found to contain eleven automobile tires, which were taken to the sheriff's office, and plaintiff in error was arrested and was charged with their theft. Afterwards the officers returned to the White House and searched it, and found therein two wrenches, a bolt-cutter and a box of pump-packing, all of which were claimed by plaintiff in error as owner. The tools were found in a tool-box in the kitchen, and on the trial he introduced witnesses who testified that he had these in his possession before Burr's garage was burglarized. All of the articles found on the premises, except a few of the tires that were not well identified by Burr as his property, were introduced in evidence as exhibits before the jury. Burr claimed to be able to identify the tools as his property because of his familiarity with them and because of certain parts being broken off of the bolt-cutter. Plaintiff in error disclaimed being the owner of the tires and also disclaimed all knowledge of them and as to how they came there. His evidence tended to show that the passageway under his house was used somewhat by the public in traveling by his house. Other families had occupied the White House before he rented it.

When this case was called in the circuit court plaintiff in error by his attorney made a motion to quash the indictment, which was overruled. He then made a motion in writing, verified by affidavit, asking for the return of all the property claimed by him and taken from his cottage by the officers, and stated that the State's attorney intended to use said property as evidence on the trial. It was further stated in the affidavit that the property was taken from his house unlawfully and without any warrant or authority for the search and seizure, and that the doors were forced open and the property seized in violation of his rights guaranteed by the State and Federal constitutions, and that the State's attorney retained his property and refused to return it to him and intended to use it for the unlawful purpose aforesaid. The court denied the motion and refused to give the defendant any hearing whatever upon his motion. Upon being arraigned he pleaded not guilty and again renewed his motion aforesaid, which was denied. The cause proceeded to trial, and during the trial, when the wrenches, bolt-cutter and pump-packing were introduced in evidence, he again objected to the evidence on the ground that they were his property and that his constitutional rights were being invaded. At the close of all of the evidence he again renewed his motion to exclude the exhibits, but the court denied all of his motions and overruled the objections. At the beginning of the trial plaintiff in error also made a motion asking that the State's attorney be compelled to elect upon which count of the indictment he would proceed. This motion was denied and he has assigned errors upon said rulings.

The fourth amendment to the Federal constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place

to be searched, and the persons or things to be seized."
Section 6 of article 2 of our constitution is in substantially
the same language as the fourth amendment aforesaid. The
fifth amendment to the Federal constitution contains this
provision: "No person shall be compelled, in any criminal
case, to be a witness against himself." Section 10 of arti-
cle 2 of our constitution contains this language: "No per-
son shall be compelled in any criminal case to give evidence
against himself." It is the foregoing provisions of the
State and Federal constitutions that plaintiff in error claims
have been violated in this case and his constitutional rights
denied thereby.

It is very clear that the defendant's constitutional rights
were ruthlessly and unlawfully violated. The officers had
no right whatever to enter his home by force or by permis-
sion of another in his absence and search his premises with-
out first obtaining a proper warrant for such search and
seizure, as required by our constitution. There can be no
question but that plaintiff in error has been compelled, un-
der the showing in the record, to give or furnish evidence
against himself, in violation of his constitutional rights.
There was a legal way for the State to proceed by its offi-
cers in the search of his premises, by first making a show-
ing that they were entitled to a warrant authorizing them
to search for and seize the particular articles named, if
they could make a *prima facie* showing that either the State
or the prosecuting witnesses had the right to forcibly seize
the articles for their purpose and use. Such action of
the officers in forcibly or unlawfully and without a war-
rant entering the plaintiff in error's home and searching it
and seizing the articles aforesaid has in unmistakable terms
been condemned by the courts of this country. If an Ameri-
can's constitutional rights cannot be protected against ruth-
less and unlawful acts of the character disclosed in this
record, then the constitution guaranteeing such rights is
a mere nullity and our boasted rights of liberty are vain

boastings. There was undoubtedly a remedy in this case for plaintiff in error by which he could protect himself against the invasion of his rights, and he undoubtedly used his very best diligence in securing that remedy. He petitioned the court repeatedly, before the trial was entered upon, to make the legal investigation that would disclose whether or not his rights were invaded as he charged in his affidavit, but the court denied the motions at every turn. There is no denial anywhere in the record of his charge that his constitutional rights were invaded, and that the articles of property taken from his home, which he claimed to be his own, were put in evidence as exhibits against him in the trial. Under well considered decisions of the courts of this country it must be held that the action of the court in denying his motions is reversible error.

An offer of proof made on the trial of a cause raises no other question than that of the competency, relevancy and materiality of the evidence offered. Consequently the court, on an objection being made, cannot be expected to stop the trial of the case and enter upon the trial of a collateral issue as to the source from which the evidence was obtained. This court has repeatedly refused to enter upon the trial of such collateral issues even when the objection raised to the competency of the evidence was based upon the claim that the evidence had been secured by means of unlawful search and seizure, in violation of the defendant's constitutional rights. (*Gindrat* v. *People,* 138 Ill. 103; *Siebert* v. *People,* 143 id. 571; *Trask* v. *People,* 151 id. 523; *People* v. *Paisley,* 288 id. 310.) Other courts of this country have made the same rulings in substance. (*People* v. *Adams,* 176 N. Y. 351, sustained in *Adams* v. *People,* 24 Sup. Ct. 372; *Commonwealth* v. *Tibbetts,* 157 Mass. 519; *State* v. *Marxhausen,* (Mich.) 3 A. L. R. 1505.) In 10 R. C. L. 933, after laying down the rule of law that in the orderly course of the trial the court will not stop the trial to determine in what manner the evidence has been,

obtained, and that an objection that exhibits have been obtained by unlawful search and seizure will only be considered as raising an objection to the competency and relevancy of the evidence, it is said: "It is obvious, and the courts have frequently declared, that if letters and private documents may be seized in violation of the constitutional safeguard and held and used in evidence against a citizen accused of crime then the constitutional provision is ineffectual and of no value." It is further stated by the author, in substance, that as the constitution guarantees the rights of the defendant in criminal cases, there must, of necessity, be a remedy. The author then states the remedy in substance, that the defendant should make timely application to the court, before the beginning of the trial, for an order directing the return to the applicant of the property or of the papers unlawfully seized, and that on such an application the question of the legality of the seizure must be fully heard, and if the court erroneously refuses to order such return and thereafter receives the property in evidence against the applicant over his objection, it is an error for which a judgment of conviction must be reversed. The decisions of the Supreme Court of the United States and of several other courts of this country support the law laid down by that author in every particular, when the question of unlawful search and seizure is properly raised. (*Boyd* v. *United States*, 6 Sup. Ct. 524; *Weeks* v. *United States*, 34 id. 341; *Gouled* v. *United States*, 41 id. 261; *Amos* v. *United States*, id. 266; *State* v. *Marxhausen, supra.*) Some of the State courts hold that it is not even necessary to make a preliminary motion for a hearing to determine whether or not there has been an unlawful search and seizure, but that the objection to such exhibits should be sustained on the trial whenever it is made to appear that the exhibits have been obtained by unlawful search and seizure. *State* v. *Slamon,* 73 Vt. 212; *State* v. *Height,* 117 Iowa, 650.

This case raises in this court for the first time the question whether it is the duty of the court to determine whether or not property and papers of the defendant were obtained by unlawful search and seizure when an application has been made in apt time for their exclusion, and it is our duty, in view of our obligations to support the constitution, to hold that it was the duty of the trial court to inquire into the truth of the charge of defendant, and, if it be found to be true, to sustain his objection to the introduction of all exhibits that were claimed by him as his property and taken from his home by means of unlawful search and seizure. Our holding is that the unlawful search and seizure aforesaid violate the provisions of our State constitution. Said provisions of the Federal constitution, and the Federal decisions thereon, are quoted and cited as very applicable because only of the similarity of the provisions aforesaid of both constitutions.

The offenses of burglary, larcency and receiving stolen goods may be joined in one indictment against one or several defendants, and such an indictment will not be subject to a successful attack by a motion to quash or by demurrer, merely because the offenses are different crimes, or because it may appear that one or more defendants are guilty of one of such offenses, etc. The rule is, that where different crimes may arise or grow out of the same transaction such crimes may be joined in one indictment, and the doctrine of election as to the count by the State does not apply. *People* v. *Weil,* 243 Ill. 208; *People* v. *Goodman,* 283 id. 414.

The State's attorney was guilty of improper conduct in asking the defendant, as a witness, if he was not the party who was convicted of larceny in a Federal court. In criminal cases, proof of the conviction for an infamous crime, for the purpose of affecting credibility, can only be made by the introduction of the record of the conviction

or a properly certified copy thereof. *Bartholomew* v. *People,* 104 Ill. 601.

Other errors have been discussed or alleged but are not material for the purposes of this decision.

For the reasons aforesaid the judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*