(No. 80486)

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. PAUL KRUEGER, Appellee.

*Opinion filed December 19, 1996.—Rehearing denied February 3, 1997.*

MILLER, J., dissenting.

James E. Ryan, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson and Lisa Anne Hoffman, Assistant Attorneys General, of Chicago, and Mark C. Curran, Jr., Assistant State's Attorney, of counsel), for the People.

Hercules Paul Zagoras, of Waukegan, for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The central issue in this appeal is whether section 108—8(b)(2) of the "no-knock" statute (725 ILCS 5/108—8(b)(2) (West 1994)) violates constitutional guarantees against unreasonable searches and seizures. We answer in the affirmative. We next hold that the Illinois Constitution of 1970 prohibits the application of the good-faith exception to the exclusionary rule recognized in *Illinois v. Krull*, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987).

## FACTS

On November 15, 1995, an agent of the Lake County

Metropolitan Enforcement Group and an informant identified as John Doe appeared before a judge of the circuit court of Lake County and presented a complaint for a search warrant. The complaint requested a warrant to search the defendant, Paul Krueger, and his home for the purpose of seizing cocaine and other items related to the sale of controlled substances.

According to the affidavit signed by the agent and John Doe, they had conducted a controlled purchase of cocaine from the defendant at his residence within the last 72 hours. John Doe also attested that he had purchased cocaine from the defendant on prior occasions and the defendant told him that he keeps guns in his home. John Doe had personally seen one firearm in the defendant's home, sometime within the previous two months.

The circuit judge issued a warrant authorizing the police to search the defendant and his home. The judge further authorized the police to enter the defendant's home without knocking and announcing their office. The judge found that an unannounced entry was permitted under the no-knock statute (725 ILCS 5/108—8(b) (West 1994)) because the defendant was known to keep a firearm there. Subsection (b)(2) of the statute classified the prior possession of a firearm as an exigent circumstance (725 ILCS 5/108—8(b)(2) (West 1994)), which authorized a no-knock entry.

The next morning police forcibly entered the defendant's home without knocking and announcing their office. The defendant was arrested and later charged with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1994)), unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(A) (West 1994)), and armed violence (720 ILCS 5/33A—2 (West 1994)), based on evidence seized during the search.

On January 5, 1996, the defendant filed a motion to quash his arrest and suppress evidence. The parties stipulated to the above facts and asked the circuit court to rule on the motion as a matter of law. In the motion, the defendant contended that the mere presence of a firearm in his home did not constitute an exigent circumstance, which would excuse the knock-and-announce requirement. He thus asserted that the police officers' unannounced entry into his home violated his constitutional rights. The circuit court of Lake County agreed and granted the defendant's motion to quash his arrest and suppress evidence.

Upon a request for clarification by the State, the circuit court declared subsection (b)(2) of the no-knock statute to be unconstitutional. The State then argued that the good-faith exception to the exclusionary rule recognized in *Illinois v. Krull*, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), should apply because the officers, in making their unannounced entry, were acting in objectively reasonable reliance on a statute later declared to be unconstitutional. The circuit court declined to follow *Krull* based on *People v. McGee*, 268 Ill. App. 3d 32 (1994), where our appellate court held that to do so would violate the Illinois Constitution.

This direct appeal by the State followed. 134 Ill. 2d R. 603. We now affirm the circuit court's judgment.

## ANALYSIS

### I

The State contends that the circuit court erred in granting the defendant's motion to quash his arrest and suppress evidence. According to the State, the police were not required to knock and announce their office before entering the defendant's home because they had a warrant issued pursuant to subsection (b)(2) of the no-knock statute authorizing their unannounced entry.

The defendant counters that subsection (b)(2) of the no-knock statute contravenes the fourth and fourteenth amendments to the United States Constitution and article I, section 6, of the Illinois Constitution of 1970. He asserts that subsection (b)(2) unconstitutionally classifies the mere presence of a firearm in a home as an exigent circumstance. He therefore maintains that the officers' unannounced entry into his home based on subsection (b)(2) violated his constitutional rights.

A circuit court's ruling on a motion to quash arrest and suppress evidence generally is subject to reversal only if manifestly erroneous. *People v. Saechao*, 129 Ill. 2d 522, 534 (1989). This case, however, involves the circuit court's application of the law to uncontroverted facts. Consequently, this case presents a question of law for which we conduct *de novo* review. See *People v. Dilworth*, 169 Ill. 2d 195, 201 (1996).

Section 108—8(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/108—8(b) (West 1994)), the "no-knock" statute, purports to set forth the circumstances under which law enforcement officials may execute a warrant by entering a dwelling without first knocking and announcing their office. The subsection of the statute at issue in this case, subsection (b)(2), provides:

> "(b) Upon a finding by the judge issuing the warrant that any of the following exigent circumstances exist, the judge may order the person executing the warrant to make entry without first knocking and announcing his office:
>
>   \*\*\*
>
>   (2) the prior possession of firearms by an occupant of the building within a reasonable period of time[.]" 725 ILCS 5/108—8(b)(2) (West 1994).

Subsection (b)(2) authorizes the judge issuing a warrant to order police to make a no-knock entry based solely on the so-called exigent circumstance of an occupant's prior possession of firearms within a reasonable time period. In the present case, there is no dispute that subsection

(b)(2) was fully complied with when the circuit judge who issued the warrant ordered police to make a no-knock entry into the defendant's home based solely on the circumstance that the defendant was known to keep a firearm there. The issue before us is whether subsection (b)(2) violates the federal or state constitutions (U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6), as the defendant claims.

The fourth and fourteenth amendments to the United States Constitution provide that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" shall not be violated by government officials. U.S. Const., amend. IV; see *Elkins v. United States*, 364 U.S. 206, 213, 4 L. Ed. 2d 1669, 1675, 80 S. Ct. 1437, 1442 (1960) (this fourth amendment prohibition is applicable to state officials through the fourteenth amendment). Similarly, article I, section 6, of the Illinois Constitution of 1970 guarantees that the "People shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches [and] seizures." Ill. Const. 1970, art. I, § 6. The language of the two constitutional provisions concerning unreasonable searches and seizures is nearly identical. Because the defendant makes no distinction between the federal and state provisions in his argument on this issue, we measure his constitutional protections under both using the same standard. See *People v. Tisler*, 103 Ill. 2d 226, 235-36, 243 (1984).

The underlying command of the fourth amendment is that searches and seizures by governmental officials be reasonable. In *Wilson v. Arkansas,* 514 U.S. 927, 131 L. Ed. 2d 976, 115 S. Ct. 1914 (1995), the United States Supreme Court held for the first time that part of the reasonableness inquiry under the fourth amendment is whether police complied with the knock-and-announce

rule. The basic principle behind this rule is that an officer may not enter a dwelling, even pursuant to a valid warrant, without first requesting admittance and announcing the reason why the officer is there. See *Wilson*, 514 U.S. at 930, 131 L. Ed. 2d at 981, 115 S. Ct. at 1917. The rule's general purposes are (1) to decrease the potential for violence, as it is recognized that an unannounced breaking and entering could easily lead the occupants to take defensive measures; (2) to protect privacy as much as possible by giving the occupants notice of the impending intrusion by police and time to respond; and (3) to prevent the physical destruction of property where it is not necessary. *E.g.*, *People v. Condon*, 148 Ill. 2d 96, 103 (1992); 1 W. LaFave & J. Israel, Criminal Procedure § 3.4(h), at 230-31 (2d ed. 1984).

The Court in *Wilson* traced the knock-and-announce principle from thirteenth-century England to its early widespread acceptance in the United States. *Wilson*, 514 U.S. at 931-34, 131 L. Ed. 2d at 980-82, 115 S. Ct. at 1916-18. "Given the longstanding common-law endorsement of the practice of announcement," the Court had "little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure." *Wilson*, 514 U.S. at 934, 131 L. Ed. 2d at 982, 115 S. Ct. at 1918. Consequently, the Court concluded that "in some circumstances an officer's unannounced entry into a home might be unreasonable" and, therefore, unconstitutional under the fourth amendment. *Wilson*, 514 U.S. at 934, 131 L. Ed. 2d at 982, 115 S. Ct. at 1918.

The Court went on to explain that the fourth amendment's reasonableness requirement does not "mandate a rigid rule of announcement" in every situation. *Wilson*, 514 U.S. at 934, 131 L. Ed. 2d at 982, 115 S. Ct. at 1918. Rather, the Court recognized that there

are certain circumstances under which an unannounced entry is constitutionally reasonable, such as where there is a threat of physical violence or where officers have reason to believe that evidence will be destroyed if advance notice is given. *Wilson*, 514 U.S. at 934-37, 131 L. Ed. 2d at 982-84, 115 S. Ct. at 1918-19, citing *Ker v. California*, 374 U.S. 23, 38-41, 10 L. Ed. 2d 726, 740-42, 83 S. Ct. 1623, 1632-34 (1963) (plurality opinion). The Court nonetheless declined to catalog all these circumstances, expressly leaving this task to the lower courts. *Wilson*, 514 U.S. at 937, 131 L. Ed. 2d at 984, 115 S. Ct. at 1919.

Prior to *Wilson*, this court considered the knock-and-announce rule in determining whether an entry preceding an arrest or a search is "constitutionally reasonable." *E.g.*, *People v. Wolgemuth*, 69 Ill. 2d 154, 166 (1977). This court's decisions, like *Wilson*, recognize that compliance with the knock-and-announce rule is not required in every situation. According to our precedent, officers are excused from making the ordinary announcements where "exigent circumstances" exist sufficient to justify the intrusion. *E.g.*, *People v. Ouellette*, 78 Ill. 2d 511, 518 (1979). In general, exigent circumstances encompass such considerations as danger to the police officers executing the warrant, the uselessness of the announcement, or the ease with which evidence may be destroyed. *E.g.*, *Ouellette*, 78 Ill. 2d at 518.

The State contends that subsection (b)(2) survives the defendant's constitutional challenges because it recognizes a legitimate exigent circumstance. As noted above, subsection (b)(2) authorizes an unannounced entry where the judge finds that "an occupant of the building" to be searched has possessed firearms "within a reasonable period of time." 725 ILCS 5/108—8(b)(2) (West 1994). The State reasons that, where a person is known to have recently possessed firearms, the logical inference is that the officers executing the warrant will

be in danger if they first knock and announce their office. This court has rejected this rationale before.

In *People v. Condon*, 148 Ill. 2d 96, 101 (1992), 12 drug enforcement agents, acting on a valid search warrant, entered a home with the aid of a battering ram. They did not knock or announce themselves in any way. The complaint on which the warrant was based noted that the two brothers who resided in the home had sold cocaine to a police informant. The informant attested that when he purchased cocaine from the brothers at their home, he saw several weapons which were used to protect drugs and currency, as well as two closed circuit television cameras and a police scanner. In addition, an agent averred that when she arrested one brother two years earlier for drug possession, he was armed with a loaded .22-caliber Baretta semi-automatic pistol.

This court specifically rejected the State's argument that the known presence of firearms in the Condon home created an exigent circumstance justifying the no-knock entry. Following established precedent, this court held that an exigent circumstance does not result from the mere presence of firearms in the building to be searched; rather, the officers must have a reasonable belief that a weapon will be used against them if they proceed with the ordinary announcements. *Condon*, 148 Ill. 2d at 104-06, citing *People v. Ouellette*, 78 Ill. 2d 511, 520-21 (1979) (establishing the rule in Illinois); accord *Poole v. United States*, 630 A.2d 1109, 1118 (D.C. 1993) (and the many cases cited therein); see generally 1 W. LaFave & J. Israel, Criminal Procedure § 3.6(b), at 264 (2d ed. 1984) (stating that "it is not enough that the person to be arrested is known to own a weapon," in discussing exigent circumstances). The record contained no such evidence, the court found. Although the brothers were known to own and carry firearms, they were not known to be violent or to threaten to use violence. This court explained

why the rule of announcement prevails in circumstances such as these, stating:

> "Indeed, the need for compliance with the knock-and-announce rule would seem to be even greater where the police know there are weapons present, but the persons involved are not known to have a propensity to use weapons. Any citizen in the privacy of his or her home might resort to the use of violence if threatened by a completely unexpected and unannounced entry into the home, let alone someone who is involved in the world of drugs. Again, we reiterate that the purpose of the knock-and-announce rule is to prevent what could turn out to be deadly encounters between police and citizens." *Condon*, 148 Ill. 2d at 107-08.

After rejecting the State's other claimed exigencies, this court held that the agents' unannounced entry into the brothers' home violated the constitutional requirements of reasonableness and suppressed the evidence resulting from the search. *Condon*, 148 Ill. 2d at 102-08.

Applying the precedent discussed above, we hold that subsection (b)(2) is unconstitutional. Subsection (b)(2) authorizes no-knock entries based solely on an occupant's prior possession of firearms. The above precedent establishes, however, that such entries violate the constitutional requirements of reasonableness. Given this clear conflict between subsection (b)(2) and the federal and state constitutions, subsection (b)(2) cannot stand.

We reject the State's attempt to distinguish subsection (b)(2) from *Condon*. The State argues that the statute is different because it provides for a neutral and detached magistrate who determines whether exigent circumstances exist in any given case. We disagree with this interpretation of subsection (b)(2). By its plain language, subsection (b)(2) defines an occupant's prior possession of firearms to be an exigent circumstance, and it authorizes a no-knock entry based solely on this so-called exigent circumstance. As our earlier discussion

reveals, such an entry is not constitutionally reasonable. We thus conclude that the judge's participation under subsection (b)(2) does not cure its constitutional infirmities.

We note that, under *Condon*, a no-knock entry is constitutionally reasonable where officers have a reasonable belief that an occupant will use a firearm against them if they proceed with the ordinary announcements. *Condon*, 148 Ill. 2d at 104-06. The record in the present case is barren of any evidence to this effect. We therefore conclude that no exigent circumstance existed here and, as a result, the officers' unannounced entry into the defendant's home violated his constitutional rights to be free from unreasonable searches and seizures.

## II

Having concluded that subsection (b)(2) is unconstitutional, we must next determine whether the evidence seized from the defendant's home should be excluded. The State argues that we should reverse the circuit court's suppression order based on the good-faith exception to the exclusionary rule recognized in *Illinois v. Krull*, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987). We hold that the *Krull* good-faith exception does not comport with article I, section 6, of the Illinois Constitution of 1970.

In *Krull*, a bare majority of the United States Supreme Court extended the good-faith exception to the exclusionary rule first established in *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). *Krull*, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160. In *Leon*, the Court held that the fourth amendment exclusionary rule will not bar the use of evidence obtained by a police officer who reasonably relied, in objective good faith, on a search warrant issued by a neutral and detached magistrate, but ultimately found

to be unsupported by probable cause. *Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405. The *Krull* majority broadened this good-faith exception, holding that the fourth amendment exclusionary rule does not bar the use of evidence seized by a police officer who reasonably relied, in objective good faith, on a statute that authorizes a warrantless administrative search, but the statute is later declared to be unconstitutional. *Krull*, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160. Following the rationale set forth in *Leon*, the *Krull* Court stated that the basic purpose of the fourth amendment exclusionary rule is to deter future misconduct. The Court reasoned that the exclusionary rule's application in situations where police officers conducted a search in reliance on the authority of a statute, which is only later determined to be unconstitutional, would have little deterrent effect on future police misconduct. *Krull*, 480 U.S. at 347-49, 94 L. Ed. 2d at 373-75, 107 S. Ct. at 1165-67. A major underpinning of the majority's decision was its determination that legislators are not inclined to act in contravention of fourth amendment values; as a result, the majority found no evidence that the exclusionary rule is necessary to deter legislators from enacting unconstitutional statutes. *Krull*, 480 U.S. at 349-52, 94 L. Ed. 2d at 375-77, 107 S. Ct. at 1167-69. In the final analysis, when the Court weighed the "incremental deterrent" effect of the exclusionary rule's application in these situations against the substantial social costs exacted by the rule, it determined that the exclusionary rule must fall. *Krull*, 480 U.S. at 352-53, 94 L. Ed. 2d at 377, 107 S. Ct. at 1168. The Court did allow for two exceptions to *Krull*'s extended good-faith exception, however. It does not apply if (1) in enacting the statute, the legislature wholly abandoned its responsibility to enact constitutional laws; or (2) the statute's provisions are such that a reasonable officer should have known

that the statute was not constitutional. *Krull*, 480 U.S. at 355, 94 L. Ed. 2d at 378-79, 107 S. Ct. at 1170.

Justice O'Connor's dissent revealed several serious flaws in the majority's decision. She pointed out that this newly created exception to the fourth amendment exclusionary rule provides a "grace period" for unconstitutional search and seizure legislation, during which time "the State is permitted to violate constitutional requirements with impunity." *Krull*, 480 U.S. at 361, 94 L. Ed. 2d at 382, 107 S. Ct. at 1173 (O'Connor, J., dissenting, joined by Brennan, Marshall and Stevens, JJ.). Further, Justice O'Connor did not find the majority's extension of the good-faith exception to be supported by *Leon*'s rationale. She persuasively distinguished *Leon* on the following grounds. First, there is a "powerful historical basis for the exclusion of evidence gathered pursuant to a search authorized by an unconstitutional statute." *Krull*, 480 U.S. at 362, 94 L. Ed. 2d at 383, 107 S. Ct. at 1173 (O'Connor, J., dissenting, joined by Brennan, Marshall and Stevens, JJ.). Not only were such statutes "the core concern of the Framers of the Fourth Amendment," the exclusionary rule had regularly been applied to suppress evidence gathered under unconstitutional statutes. *Krull*, 480 U.S. at 362-63, 94 L. Ed. 2d at 383-84, 107 S. Ct. at 1173-74 (O'Connor, J., dissenting, joined by Brennan, Marshall and Stevens, JJ.), citing, e.g., *Ybarra v. Illinois*, 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979). Second, Justice O'Connor found this history illustrative of the fact that the relevant state actors in *Krull*—legislators—often pose a serious threat to fourth amendment values. She saw a clear distinction between the legislator and the judicial officer who mistakenly issued a warrant in *Leon*. She noted:

> "The judicial role is particularized, fact-specific and nonpolitical. Judicial authorization of a particular search does not threaten the liberty of everyone, but rather authorizes a single search under particular circumstances.

The legislative act, on the other hand, sweeps broadly, authorizing whole classes of searches, without any particularized showing. A judicial officer's unreasonable authorization of a search affects one person at a time; a legislature's unreasonable authorization of searches may affect thousands or millions and will almost always affect more than one. Certainly the latter poses a greater threat to liberty." *Krull*, 480 U.S. at 365, 94 L. Ed. 2d at 385, 107 S. Ct. at 1175 (O'Connor, J., dissenting, joined by Brennan, Marshall and Stevens, JJ.).

Having successfully distinguished *Leon*, Justice O'Connor next pointed out that "the novelty" of the majority's decision was "illustrated by the fact that [under it] no effective remedy is to be provided in the very case in which the statute at issue was held unconstitutional." *Krull*, 480 U.S. at 368, 94 L. Ed. 2d at 387, 107 S. Ct. at 1177 (O'Connor, J., dissenting, joined by Brennan, Marshall and Stevens, JJ.). As she noted, the lack of a remedy leaves no incentive for the aggrieved defendant to challenge the statute as unconstitutional. Justice O'Connor last questioned how the limited exceptions to the *Krull* good-faith exception could be applied in practice. "Under what circumstances a legislature can be said to have 'wholly abandoned' its obligation to pass constitutional laws is not apparent on the face of the Court's opinion." *Krull*, 480 U.S. at 369, 94 L. Ed. 2d at 388, 107 S. Ct. at 1177 (O'Connor, J., dissenting, joined by Brennan, Marshall and Stevens, JJ.).

The State's argument that we should reverse the circuit court's suppression order is based solely on *Krull*. *Krull* is controlling in this case as to whether there is a federal constitutional basis for excluding the evidence seized from the defendant's home. Pursuant to *Krull*, exclusion of this evidence is not supportable on the ground that it was obtained by virtue of an unconstitutional statute. We nevertheless hold that the exclusionary rule arising out of our state constitution (Ill. Const.

1970, art. I, § 6) continues to afford the protection abrogated by *Krull.*

This court unquestionably has the authority to interpret provisions of our state constitution more broadly than the United States Supreme Court interprets similar provisions of the federal constitution. *People v. Perry,* 147 Ill. 2d 430, 436 (1992). We acknowledge that this court has long applied the lockstep doctrine to follow Supreme Court decisions in fourth amendment cases. *People v. Tisler,* 103 Ill. 2d 226, 241-46 (1984); *People v. Tillman,* 1 Ill. 2d 525, 529-30 (1953). We knowingly depart from that tradition here, for the reasons set forth below.

Initially, we note that our state exclusionary rule has applied in Illinois for more than 70 years to suppress evidence gathered in violation of the Illinois Constitution's prohibition against unreasonable searches and seizures. *People v. Brocamp,* 307 Ill. 448 (1923) (this court, following the United States Supreme Court's recognition of the federal exclusionary rule arising out of the fourth amendment in *Weeks v. United States,* 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914), recognized a separate state exclusionary rule arising out of similar language in the Illinois Constitution); see also *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961) (extending the federal exclusionary rule by applying it to state governmental officials through the due process clause of the fourteenth amendment, thereby rendering our state exclusionary rule superfluous after nearly four decades of independent application). This exclusionary rule has always been understood to bar evidence gathered under the authority of an unconstitutional statute (see *Brocamp,* 307 Ill. 448 (adopting the reasoning in *Weeks* for purposes of our state exclusionary rule); *Weeks,* 232 U.S. at 394, 58 L. Ed. at 656, 34 S. Ct. at 345 (making it clear that the federal exclusionary rule was

intended to apply to evidence gathered by officers acting under "legislative *** sanction")), so long as that statute purported to authorize an unconstitutional search or seizure (see *Michigan v. DeFillippo*, 443 U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627 (1979) (recognizing a substantive-procedural distinction not at issue here; specifically holding that the fourth amendment exclusionary rule did not apply where an ordinance was held unconstitutional on vagueness grounds)). Consequently, to adopt *Krull*'s extended good-faith exception would drastically change this state's constitutional law.

This court is obliged to evaluate the rationale underlying *Krull* in determining whether to adopt its extended good-faith exception for purposes of the exclusionary rule arising out of our state constitution. Like the United States Supreme Court, this court employs a balancing test to delineate the scope of our state exclusionary rule: "Decisions involving the exclusionary rule and the Illinois Constitution's article I, section 6, require that we carefully balance the legitimate aims of law enforcement against the right of our citizens to be free from unreasonable governmental intrusion." *People v. Tisler*, 103 Ill. 2d 226, 245 (1984); *cf. Krull*, 480 U.S. at 352-53, 94 L. Ed. 2d at 377, 107 S. Ct. at 1168-69; *Leon*, 468 U.S. at 907, 82 L. Ed. 2d at 688, 104 S. Ct. at 3412. In performing this duty here, we conclude that our citizens' rights prevail. We are not willing to recognize an exception to our state exclusionary rule that will provide a grace period for unconstitutional search and seizure legislation, during which time our citizens' prized constitutional rights can be violated with impunity. We are particularly disturbed by the fact that such a grace period could last for several years and affect large numbers of people. This is simply too high a price for our citizens to pay. We therefore conclude that article I, section 6, of the Illinois Constitu-

tion of 1970 prohibits the application of *Krull*'s extended good-faith exception to our state exclusionary rule.

Not surprisingly, several fourth amendment scholars have severely criticized *Krull*. *E.g.*, 1 W. LaFave, Search & Seizure § 1.3(h), at 96-99 (3d ed. 1996). Our own appellate court has determined that the *Krull* good-faith exception violates the Illinois Constitution. *People v. McGee*, 268 Ill. App. 3d 32 (1994). In addition, several state courts of last resort presumably will reject *Krull*'s extension of the good-faith exception based on their determination that the *Leon* good-faith exception violates their respective state constitutions. See *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992); *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991); *State v. Oakes*, 157 Vt. 171, 598 A.2d 119 (1991); *State v. Marsala,* 216 Conn. 150, 579 A.2d 58 (1990); *State v. Carter*, 322 N.C. 709, 370 S.E.2d 553 (1988); *State v. Novembrino*, 105 N.J. 95, 519 A.2d 820 (1987). This result is self-evident because one cannot reject *Leon*'s good-faith exception and accept *Krull*'s extension of that exception.

Before concluding, we note that our decision today does not impact the *Leon* good-faith exception. See *People v. Turnage*, 162 Ill. 2d 299, 306 (1994). Although the converse is not true, one can fully accept the rationale and result in *Leon* while rejecting the rationale and result in *Krull*. This is precisely what Justice O'Connor did in her dissent in *Krull*.

For the reasons stated, we affirm the circuit court's suppression order. The circuit court's judgment is therefore affirmed in its entirety.

*Affirmed.*

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that the Illinois Constitution forbids in this case what the United States Constitution clearly allows. I would

therefore apply the good-faith exception recognized by the Supreme Court in *Illinois v. Krull*, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), and reverse the circuit court's order suppressing the evidence seized from the defendant.

In *People v. Tisler*, 103 Ill. 2d 226, 245 (1984), this court defined the circumstances under which it is appropriate to interpret provisions of the Illinois Constitu-' tion differently from their federal counterparts:

"After having accepted the pronouncements of the Supreme Court in deciding fourth amendment cases as the appropriate construction of the search and seizure provisions of the Illinois Constitution for so many years, we should not suddenly change course and go our separate way simply to accommodate the desire of the defendant to circumvent what he perceives as a narrowing of his fourth amendment rights under the Supreme Court's decision ***. Any variance between the Supreme Court's construction of the provisions of the fourth amendment in the Federal Constitution and similar provisions in the Illinois Constitution must be based on more substantial grounds. We must find in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal Constitution, after which they are patterned."

In the present case, the majority does not point to anything in either the text or history of our state constitution that would warrant this court in reaching a result different from the one reached by the United States Supreme Court in *Krull*. In the absence of a valid ground for distinguishing the language of article I, section, 6, of the Illinois Constitution from the fourth amendment, I would adhere to *Krull* and recognize, in our own state constitution, a good-faith exception to the exclusionary rule when searches and seizures are conducted under statutes that are later held invalid. Because the statute here was not so obviously unconsti-

tutional as to render the good-faith exception inapplicable (see *Krull,* 480 U.S. at 355, 94 L. Ed. 2d at 378-79, 107 S. Ct. at 1170), I would reverse the trial court's order suppressing the evidence seized in this case.

It should be noted, moreover, that the officers in the present case were not resting simply on their own interpretations of the statute but were acting pursuant to a warrant that authorized a no-knock entry; the warrant is defective only because the statute on which it depends is now found to be unconstitutional. A number of the concerns cited by the majority in opposition to *Krull* are therefore inapplicable to this case, in which a judicial intermediary stood between the statute and the search.

Just as the majority follows federal law in evaluating the validity of the statute under both the federal and state constitutions, so too should we follow federal law in applying the good-faith exception to the exclusionary rule. In comparing article I, section 6, and the fourth amendment, the majority correctly recognizes, "The language of the two constitutional provisions concerning unreasonable searches and seizures is nearly identical" (174 Ill. 2d at 65), and the majority invokes *Tisler* and other decisions involving the fourth amendment in determining that the statute at issue here is invalid. Having found the statute unconstitutional under federal law, however, the majority incongruously fails to follow the same line of authority in considering the application of the good-faith exception to the exclusionary rule.