# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2015 IL App (1st) 140093

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MILTRON BROWN, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-14-0093 |
| Filed<br>Rehearing denied | March 31, 2015<br>April 28, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-13619; the Hon. Noreen Valeria Love, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Sari London, and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.<br><br>Law Office of Michael D. Walsh, of Chicago (Michael D. Walsh, of counsel), for appellee. |

JUSTICE MASON delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Hyman concurred in the judgment and opinion.

# OPINION

¶ 1    Defendant-appellee Miltron Brown was indicted on multiple counts related to the possession of both a controlled substance and a weapon. Brown's motion to quash the search warrant and suppress evidence was granted. On appeal, the State contends that the trial court erred in granting the motion to quash the search warrant because the police officers' execution of the search warrant was protected under the good-faith exception to the exclusionary rule. We disagree and affirm the judgment of the circuit court of Cook County.

## BACKGROUND

¶ 2

¶ 3    Brown filed two motions, one to quash his arrest and one to quash the search warrant. Separate suppression hearings were held on the two motions. The court denied Brown's motion to quash his arrest. At the hearing on the motion to quash the search warrant, Brown adopted the evidence previously presented at the hearing on the motion to quash his arrest.

¶ 4    Evidence adduced at the two suppression hearings established that in the afternoon hours of July 25, 2011, Officer James Lazansky conducted surveillance on a specific unit in the apartment building at 7300 Ogden Avenue in Riverside, Illinois. The surveillance was in response to complaints regarding possible narcotics activity in unit 1F, the first-floor unit toward the front of the building. The complaints were general in nature and did not include a name or a description of an individual, but simply a description of the unit and unspecified suspected narcotics activity.

¶ 5    Officer Lazansky observed Brown exit unit 1F from a rear door that was only connected to that unit and get into a tan Buick. While running a check on the vehicle registration, Officer Lazansky followed Brown to a nearby restaurant. After Brown left the restaurant and was returning to the apartment, Officer Lazansky received information that the vehicle was registered to Brown and that his driver's license had been suspended. Officer Lazansky activated his emergency lights and pulled Brown over in the driveway of the apartment building.

¶ 6    While Officer Lazansky was standing outside the vehicle talking to Brown, he saw three pills in a clear plastic bag in the handle of the driver's door which he suspected were ecstasy. Brown was arrested and taken into custody. Officer Lazansky checked with the property manager for the apartment building and learned that unit 1F was leased to Brown.

¶ 7    Later that evening, Officer Lazansky returned to the apartment building to meet Officer Galarza and Galarza's certified canine. Unit 1F had two entrances, a back entrance that only led to that unit and a front entrance that was accessed through a common entry door that also allowed access to other units. There were four mail slots in the common entry door. Although a

key was required to open the front entrance door, it was not pulled all the way shut when the officers approached the building and they were able to gain access to the common area.

¶ 8    Officer Galarza's canine gave a positive alert at both the front and back doors of unit 1F, indicating the presence of narcotics inside the unit. Officer Lazansky then returned to the police station and prepared an affidavit for a search warrant. The warrant was reviewed and approved by an assistant State's Attorney and Officer Lazansky then contacted a judge to review the warrant and affidavit. The judge later approved the search warrant.

¶ 9    The trial court noted that there was nothing for the judge to rely on in the complaint for the search warrant except the canine sniff which, according to *Florida v. Jardines*, 569 U.S. ___, ___, 133 S. Ct. 1409, 1414-15 (2013), was unconstitutional. The court explained that without the canine sniff, there was no probable cause to support the warrant and "[i]f there is no probable cause to support the warrant, then police officers cannot use good faith to rely upon that warrant." The motion to quash the search warrant was granted. The State timely filed a certificate of substantial impairment and a notice of appeal. See Ill. S. Ct. R. 604(a)(1) (eff. Feb. 6, 2013).

¶ 10                                          ANALYSIS

¶ 11    Brown has not filed a brief on appeal despite multiple extensions and we have determined to resolve this appeal on the record and the State's brief alone. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (a reviewing court should decide the merits of the appeal where the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief).

¶ 12    When reviewing a trial court's ruling on a motion to quash and suppress, we defer to the trial court's factual findings and those findings will not be reversed unless they are against the manifest weight of the evidence. *People v. Close*, 238 Ill. 2d 497, 504 (2010). However, we review *de novo* the ultimate decision to grant or deny the motion. *Id*. Where no dispute exists as to the underlying facts, our review proceeds *de novo*. *Id*.

¶ 13    Here, there is no factual dispute. Indeed, the State acknowledges that the Supreme Court held in *Jardines* that a warrantless canine sniff within the curtilage of a house, which enjoys the same constitutional protection as the house itself, violates the fourth amendment's prohibition against unreasonable searches and seizures. *Jardines*, 569 U.S. at ___, 133 S. Ct. at 1414-15. Rather, the State contends on appeal that because the *Jardines* decision was not issued until after the warrant in this case was obtained and executed, the execution of the search warrant was protected under the good-faith exception to the exclusionary rule.

¶ 14    As the trial court correctly noted, without the warrantless canine sniff, the police had nothing to establish the probable cause required for a search warrant. Officer Lazansky testified that the department received "complaints" of narcotics activity at a specific apartment, but no information was provided regarding the identity or reliability of the complainants and the complainants did not provide a name or description of the person allegedly engaging in unspecified narcotics activity. The police conducted surveillance of the apartment on one afternoon, during which time nobody arrived at the apartment and the only person seen leaving the apartment was Brown. After pulling Brown over for a traffic violation, Officer Lazansky saw a plastic bag with what appeared to be three ecstasy pills in the handle of the driver's side door. Nothing in these facts supports the requisite probable cause to obtain a search warrant for

Brown's apartment. Therefore, the trial court's order granting the motion to suppress can be reversed only if the good-faith exception to the exclusionary rule applies.

¶ 15    Under the exclusionary rule, evidence that is gathered by the police in violation of the fourth amendment is inadmissible. *People v. Sutherland*, 223 Ill. 2d 187, 227 (2006). In *United States v. Leon*, 468 U.S. 897, 919-22 (1984), the Supreme Court held that the exclusionary rule does not bar evidence obtained by a police officer who reasonably relies, in objective good faith, on a search warrant issued by a neutral and detached magistrate but that is later found to be unsupported by probable cause. The *Leon* good-faith exception was adopted by our supreme court in *People v. Stewart*, 104 Ill. 2d 463, 477 (1984), and codified at section 114-12 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-12(b)(1), (b)(2) (West 2012)).

¶ 16    The State contends that under existing case law, "dog sniffs were entirely lawful in Illinois" prior to the *Jardines* decision; therefore, the State argues the officer reasonably relied on this precedent and the good-faith exception should apply. In support of this argument, the State cites the Supreme Court's extension of the good-faith exception in *Davis v. United States*, 564 U.S. ___, ___, 131 S. Ct. 2419, 2429 (2011), to reliance on binding appellate precedent that specifically authorizes a particular police practice.

¶ 17    We reject the State's argument for two reasons. First, even if Illinois were to adopt the *Davis* extension of the good-faith exception, there is no precedent in Illinois allowing warrantless dog sniffs within the curtilage of a home. Second, Illinois Supreme Court precedent indicates that our supreme court is not likely to adopt the *Davis* extension of the good-faith exception in any event.

¶ 18    In *Davis*, the search at issue (of a vehicle's passenger compartment incident to a recent occupant's arrest) was explicitly authorized by binding Eleventh Circuit precedent prior to the Supreme Court's holding that such a search was unconstitutional in *Arizona v. Gant*, 556 U.S. 332 (2009). *Davis*, 564 U.S. at ___, 131 S. Ct. at 2428. In concurring with the majority, Justice Sotomayor noted that *Davis* did not present "the markedly different question whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled." *Davis*, 564 U.S. at ___, 131 S. Ct. at 2435 (Sotomayor, J., concurring).

¶ 19    This court has considered whether the good-faith exception to the exclusionary rule applies to unconstitutional canine sniffs that occurred prior to *Jardines* in light of the Supreme Court's holding in *Davis*, and concluded that no binding appellate precedent authorized the officers' conduct and, therefore, the good-faith exception did not apply. *People v. Burns*, 2015 IL App (4th) 140006, ¶¶ 56-57, 60. We agree with the reasoning in *Burns* and also find instructive two federal appellate court decisions that have analyzed binding appellate precedent to determine whether the good-faith exception should apply, because those courts considered the circumstances surrounding the canine sniff in making such a determination. Compare *United States v. Givens*, 763 F.3d 987, 992 (8th Cir. 2014) (concluding the good-faith exception to the exclusionary rule applied because existing Eighth Circuit precedent determined that the use of a dog in the hallway of an apartment building to sniff around the door of an apartment did not violate the fourth amendment), with *United States v. Hill*, 776 F.3d 243, 250-51 (4th Cir. 2015) (concluding the good-faith exception to the exclusionary rule did not apply to the dog sniff of an apartment because existing Fourth Circuit precedent involved the sniff of a vehicle during a traffic stop and the sniff of a passenger train's sleeping compartment but no precedent existed involving a dog sniff of a home).

¶ 20    The Illinois precedent relied on by the State does not involve canine sniffs within the curtilage of a home. See *People v. Bartelt*, 241 Ill. 2d 217, 231 (2011) (canine sniff during a traffic stop); *People v. Driggers*, 222 Ill. 2d 65, 72-73 (2006) (same); *People v. McPhee*, 256 Ill. App. 3d 102, 112 (1993) (dog sniff of envelope); *People v. Forrest*, 172 Ill. App. 3d 385, 391-92 (1988) (dog sniff of airline luggage). Likewise, the cases cited as federal precedent also do not involve canine sniffs within the curtilage of a home. See *Illinois v. Caballes*, 543 U.S. 405, 408-09 (2005) (canine sniff during a traffic stop); *United States v. Place*, 462 U.S. 696, 707 (1983) (dog sniff of luggage in a public place). Therefore, we do not agree with the State that dog sniffs–no matter where conducted–were "entirely lawful" in Illinois prior to *Jardines*.

¶ 21    We further reject the idea that it is reasonable to apply the same rules that govern searches of vehicles during traffic stops or luggage in public places to a search within the curtilage of a home. As the Supreme Court noted: "At the [Fourth] Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." (Internal quotation marks omitted.) *Jardines*, 569 U.S. at ___, 133 S. Ct. at 1414 (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). The curtilage or area immediately surrounding and associated with the home is "intimately linked to the home" and is where "privacy expectations are most heightened." (Internal quotation marks omitted.) *Jardines*, 569 U.S. at ___, 133 S. Ct. at 1415 (quoting *California v. Ciraolo*, 476 U.S. 207, 213 (1986)).

¶ 22    Thus, even if we could predict that Illinois would adopt the *Davis* good-faith exception, there exists no binding appellate precedent in Illinois holding that canine sniffs within the curtilage of a home were constitutional prior to *Jardines*. Consequently, the good-faith exception does not apply and the trial court did not err in granting the motion to quash the search warrant and suppress the evidence.

¶ 23    Even if we were to conclude that appellate precedent regarding canine sniffs of vehicles during traffic stops and luggage in public places governed canine sniffs within the curtilage of the home, it is unlikely that our supreme court would adopt the *Davis* good-faith exception in light of its refusal to adopt a previous Supreme Court extension of the good-faith exception to the exclusionary rule that implicated the constitutional rights of Illinois citizens.

¶ 24    In *Illinois v. Krull*, 480 U.S. 340 (1987), the Supreme Court extended the good-faith exception to statutes later declared unconstitutional. But in *People v. Krueger*, 175 Ill. 2d 60, 73-74 (1996), our supreme court declined to adopt the *Krull* extension of the good-faith exception. In explaining that the adoption of the *Krull* extension for Illinois would be incompatible with our state constitution, our supreme court stated: "We are not willing to recognize an exception to our state exclusionary rule that will provide a grace period for unconstitutional search and seizure legislation, during which time our citizens' prized constitutional rights can be violated with impunity. We are particularly disturbed by the fact that such a grace period could last for several years and affect large numbers of people. This is simply too high a price for our citizens to pay." *Id*. at 75.

¶ 25    The supreme court later declined to extend the rationale in *Krueger* to anticipatory search warrants that were held to be statutorily invalid rather than constitutionally invalid. *People v. Carlson*, 185 Ill. 2d 546, 559 (1999). The court explained that such a situation did not subject Illinois citizens to a grace period during which their constitutional rights could be violated with impunity. *Id*.

¶ 26        In contrast, the supreme court refused to apply the good-faith exception to the exclusionary rule where a statute was declared unconstitutional because it violated the single subject rule, explaining that to do so would be to resurrect the amendment in question and provide a grace period during which Illinois citizens would have been subject to extraterritorial arrests without proper authorization. *People v. Carrera*, 203 Ill. 2d 1, 16 (2002). The majority reached this conclusion despite the dissent's point that the constitutional infirmity in the statute did not spring from a violation of the fourth amendment or the defendant's rights under the Illinois Constitution. *Id.* at 22 (Garman, J., dissenting, joined by Fitzgerald and Thomas, JJ.).

¶ 27        As the dissent noted in *Carrera*, the exclusionary rule applies in Illinois when suppression of evidence would further the rule's purpose of deterring further police misconduct *or* when giving effect to legislation that violates the fourth amendment or the state constitution would permit the constitutional rights of Illinois citizens to be violated with impunity. *Id.* Here, rather than giving effect to legislation that was later declared unconstitutional, the issue is a search where the law governing the constitutionality of the search was not settled and the search was later declared unconstitutional, the very situation described in Justice Sotomayor's concurrence in *Davis*. What the State urges here is expansion of the good-faith exception to the exclusionary rule based on an officer's belief that appellate precedent could be *extended* to cover a search. Such a result would expand the good-faith exception beyond recognition.

¶ 28        Moreover, the concerns underlying the decision in *Krueger* apply equally here where, if the exception is applied, there is a grace period during which the constitutional rights of Illinois citizens may be violated with impunity. In other words, applying the good-faith exception to an unconstitutional warrantless dog sniff within the curtilage of the home that occurred prior to the *Jardines* decision, even if binding appellate precedent allowed the practice, would allow the police a grace period during which the constitutional rights of Illinois citizens may be violated. We do not believe such an application comports with our supreme court precedent.

¶ 29                                          CONCLUSION
¶ 30        Because the good-faith exception to the exclusionary rule does not apply, the trial court did not err in granting the motion to quash the search warrant and suppress the evidence.

¶ 31        Affirmed.